## THE PEOPLE, Etc., Respondents, *v.* WALLACE WIL-KINSON, Appellant.

1. Mode of Executing Prisoner Under Death Sentence.—Section 124 of the former Statutes of Utah Territory, which provided that when any person was convicted of a crime the punishment of which was death, such person should suffer death by being "shot, hanged or beheaded," as the court or person condemned should select, etc., had reference only to the mode of execution, and the manner of carrying into execution the punishment of death.

2. *Held, further*—That such section was repealed by the passage of the act of March, 1876.

3. Act of 1876, Effect of.—Under the "Crimes and Punishment" act of 1876, the penalty of death is denounced against all persons who are guilty of murder in the first degree, and it is made obligatory upon the courts to impose the sentence of death.

4. Mode of Execution at Common Law.—The common law prescribed no particular manner of inflicting the death penalty, although the mode ordinarily adopted was by hanging the prisoner by the neck until he was dead. Other modes, however, were adopted in murder cases.

5. Mode of Execution in Utah.—W. was convicted of murder in the first degree, the penalty of which, under the laws in force, was death, but no mode or manner of inflicting the death penalty was provided for by statute. Defendant was sentenced to be "publicly shot" to death, etc. *Held,* That the mode and manner of carrying the sentence into effect form no part of the judgment, and the entry of such order in the judgment is no ground for its reversal. *Held, further,* That the court had the power to direct the mode of inflicting the death penalty in the absence of a special provision of the statute.

Appeal from the First Judicial District Court.

An indictment against the appellant for murder in the first degree was returned into open court on the 28th day of September, 1877.

On the 29th day of September, 1877, the appellant, be'ng in court in the custody of an officer, was duly arraigned, and entered his plea of not guilty.

The People, etc., v. Wallace Wilkinson.

On the 22d day of November, being one of the days of the regular November Term of the District Court for the First Judicial District, Territory of Utah, a good and lawful jury was impaneled to try the case.

Afterwards, to-wit, on the 24th day of November, 1877, the jury after being out returned into open court the following verdict: "We, the jury in the above entitled cause, find the respondent, Wallace Wilkinson, guilty of murder in the first degree."

Thereafter, on the 28th day of November, 1877, the following judgment and sentence was given on the verdict by the court: "Therefore, it is the judgment and sentence of this court that you be taken from hence to some place in this Territory, where you shall be safely kept until Friday, the 14th day of December next; that between the hours of 10 o'clock in the forenoon and 3 o'clock in the afternoon of the last-named day you be taken from your place of confinement to some place within this district, and that you be there publicly shot until you are dead."

The other facts are stated in the opinion of the court.

*Hoge & Williams*, for appellant.

"Execution is the completion of human punishment, and must be strictly performed in the manner which the law directs." 4 Black. Com. 403; *Ibid.* 178–179.

The old statute law of Utah provided the manner of inflicting the death penalty. Laws of Utah, March 6, 1852, p. 61, § 124.

This was repealed in terms by the penal code. Compiled Laws of Utah, p. 651, § 2229. And no law of a similar nature enacted.

"Every person who is guilty of murder in the first degree shall suffer death." Compiled Laws of Utah, p. 586, § 1920.

There being no law authorizing so much of the judgment and sentence as requires the appellant to be shot to death, the judgment is void.

There being no law on the subject the court has no right to legislate and make law nor supply the defects in the law.

*S. H. Lewis* and *Tilford & Hagan*, for the people.

The court did not err in adjudging the defendant to be shot. *People* v. *Hartung*, 22 N. Y. 96; Same Case, 26 N. Y. 167; Same Case, 28 N. Y. 400; 4 Black. Com. 403, 4; 1 Bishop's Cr. Pr. 883.

BOREMAN, J., delivered the opinion of the court:

The appellant was found guilty of murder in the first degree and sentenced to suffer death by being shot. From this judgment of the district court he has appealed to this court, and alleges as a ground for the reversal of the judgment of the district court, that there is no law in this Territory authorizing the death penalty to be inflicted by shooting, and that the sentence is therefore wrong and void.

The last section (§ 124) of a former statute of this Territory, entitled "An Act in relation to Crimes and Punishments," approved 6th March, 1852, provided that "when any person shall be convicted of any crime, the punishment of which is death, according to the provisions of this act and sentenced to die, said person shall suffer death by being shot, hanged or beheaded, as the court may direct; or the person condemned shall have his option as to the manner of his execution."

This section had reference only to the mode of execution, and in effect provided that where any other section prescribed the punishment of death, and a party should be thereunder sentenced to die, that the manner of carrying into execution such punishment should be within the limits specified, namely, shooting, hanging or beheading, or as the prisoner might select.

The section was evidently restrictive in its nature, allowing that the court had a discretion in the matter as to the mode, but that such discretion should be confined to one of the modes specified.

Thus the law stood until 1876, when the Legislature enacted

a new " Crimes and Punishment" act (Compiled Laws, p. 564) and therein expressly repealed the old act, thus blotting out the section referred to respecting the mode of punishment. In the act of 1876, however, it is provided that " every person guilty of murder in the first degree shall suffer death," or, etc. C. L. p. 586, §1920.

But no mode, however, of carrying into execution the sentence of death is specified either in that or in any other act.

The statute referred to, of 1876, styled the " Penal Code," further provides as follows:

" Sec. 10—The several sections of this code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court authorized to pass sentence, to determine and impose the penalty prescribed." C. L. p. 527, § 1840.

Thus the penalty of death is denounced against all who are guilty of murder in the first degree, and it is made obligatory upon the court to impose the sentence of death. Is the court authorized to say how that sentence is to be carried out?

The appellant claims that the court has no such power, and that if it had then the power could only be exercised to fix one manner of punishment, that of hanging, and no discretion was left to the court in the matter.

The common law prescribes no one particular manner of inflicting the death penalty, although the mode ordinarily adopted was by hanging the prisoner by the neck until he was dead. Other modes were allowable and sometimes resorted to even in murder cases. 4 Bl. Com. pp. 376, 7.

The common law did not require the court to fix the mode of execution. It was no part of the judgment and it was usually not embodied therein. Upon a calendar of the capital cases the words " let him be hanged by the neck," was entered by the judge. This calendar, after being signed by the judge and clerk, was the only authority which the officer had to execute the sentence of death by hanging. 4 Bl. Com. 403, 4; 1 Bishop's Cr. Pr. 883.

11

Nor do we see that the manner of execution is any more material than the time thereof, yet neither time nor place were any necessary part of the judgment, and if made parts of it they were deemed immaterial parts. 1 Bishop's Cr. L. § 730, 3d ed.

If the mode, therefore, be an immaterial part of the judgment, then the entry thereof in the judgment should not be a ground for reversing the judgment.

But if we assume that the mode is a material part of the judgment, and that hanging by the neck was the only mode prescribed at common law, yet there is another provision of our "penal code" which affects materially the case in view of the stress which was laid by both appellant and respondent upon the case of the *People* v. *Hartung,* reported at its various stages in several different New York reports. That statute reads as follows :

" Sec. 5—No act or omission commenced after twelve o'clock noon of the day on which this code takes effect as a law, is criminal or punishable, except as prescribed or authorized by this code," etc.   C. L. p. 565, § 1835.   I quote only so much of the section as is material to the point in issue.   If murder in the first degree can only be punished as prescribed or authorized in that code, the common law is excluded from our consideration.

In New York a similar statute, differently worded but in effect the same, was enacted.   It read as follows: " All punishments prescribed by the common law for any offense specified in this chapter (the chapter includes murder), and for the punishment of which provision is herein made, are prohibited." In that State, as with us, the law designating that the death penalty should be inflicted by hanging had been repealed.

In the case of the *People* v. *Hartung* one of the points was that the law providing for executing the death penalty by hanging had been repealed, and that the section of the New York statute quoted prohibited any common law mode, therefore no authority existed for the execution by hanging.   The

case went off on other grounds, yet the court said that although the statute respecting the mode of death had been repealed, and the common law prohibited as a resort in such case, yet the power to enforce the penalty of death existed. The statute of the State provided, as ours does, for the punishment of murder by the death of the murderer, but further provided that a copy of the sentence should be furnished to the Governor, and he should issue his warrant for the execution—the execution not to take place until one year after sentence; yet the statute failed to provide in any section for the manner of death.

The court, in the case of the *People* v. *Hartung*, after referring to these facts, said: " The mode must, therefore, rest in the discretion of the Governor or Sheriff, and for aught I see the method prevailing in France, or Russia, or Constantinople, or that which the English law formerly applied to convictions for heresy or petit treason, may be adopted." And afterwards further said: " When the legislature of 1860 repealed that section of the statute without substituting anything as to the execution of capital sentence in its place, they necessarily determined that it should no longer be obligatory for the court by its judgment, or the executive officers in the performance of their duties, to resort to that method of inflicting the punishment of death." 22 N. Y. 96; 23 How. Pr. R. 323; 26 N. Y. 167; 28 N. Y. 400.

It is likewise in this Territory, as we think, left to the discretion of the court, subject, however, to that limit which the constitution of the United States prescribes against the infliction of " cruel and unusual punishments." U. S. Const. Amdt. VIII. By no other construction than that of leaving a discretion with the court can any effect whatever be given to the statutes making death the penalty of murder in the first degree, and requiring the courts to determine and impose the sentence of death. These sections could not have been intended as nullities; and from the whole penal code we can gather no other idea than that the legislative intent was that the courts

The People, etc., v. Wallace Wilkinson.

should be allowed a discretion in the matter. The question, therefore, presents itself: "Is the manner designated in the case before us, that of death by shooting, a cruel and unusual punishment?" We do not think that the appellant so considers it, nor do we think he could. It is the mode adopted for the army in enforcing discipline; it is a mode recognized and practised in other civilized countries to enforce criminal laws; and, as we have seen, it was approved by express statute of this Territory for nearly a quarter of a century, and as history tells us, it is the manner of death of which criminals in this Territory made choice in preference to other modes, such as hanging and beheading. That manner cannot be cruel which criminals prefer, and that cannot be unusual which is often adopted.

If the statute respecting the mode of inflicting the death penalty were still in force no one would say that the infliction thereof by shooting was " cruel and unusual," for the statutes expressly designated it. Yet the fact that it was once embodied in the statute could not change the character of the manner, for the constitutional provision controls the statute, and the statute could no more provide for a manner of death that was "cruel and unusual," than a court could do so without the statute. The constitution is binding upon the legislature.

We do not, therefore, perceive that there was anything wrong in the sentence imposed by the District Court in this case.

The judgment is affirmed.

SCHAEFFER, C. J., and EMERSON, J., concurred.

NOTE. — On appeal to the Supreme Court of the United States, the foregoing case was affirmed.—*Reporter*.