THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LOUIS ROPER, Appellant.

(Argued March 17, 1932; decided May 3, 1932.)

*Harris Berlack, H. Edward Raiden, Frank Aranow* and *Alfred I. Dittler* for appellant. The infant defendant was not capable of committing a felony. (*People* v. *Hütter*, 184 N. Y. 237; *People* v. *Wagner*, 245 N. Y. 143; *People* v. *Moran*, 246 N. Y. 100; Penal Law, § 2186; *People* v. *Gardner*, 78 Misc. Rep. 514; *People* v. *Pollak*, 154 App. Div. 716; 209 N. Y. 541.) The question of deliberate and premediated killing should have been presented to

the jury. (*People* v. *Van Norman*, 231 N. Y. 454; *People* v. *Moran*, 246 N. Y. 100.)

*Thomas C. T. Crain, District Attorney* (*Robert C. Taylor* of counsel) for respondent. If the murder happens to be a felony murder, a person, no matter how tender his age, is capable of committing the underlying felony which makes him guilty of first degree murder. (Penal Law, §§ 1044, 2186.) The trial judge was correct in not submitting the lesser degrees of homicide. (*People* v. *Martone*, 256 N. Y. 395; *People* v. *Giusto*, 206 N. Y. 67; *People* v. *Fisher*, 249 N. Y. 419; *People* v. *Schleiman*, 197 N. Y. 383; *People* v. *Seiler*, 246 N. Y. 262.)

LEHMAN, J. A little before two o'clock in the morning of January 20th, 1931, two youths or men, with handkerchiefs covering their faces and armed with pistols, entered a negro restaurant on Seventh avenue in New York city. At the point of the pistol, one of them compelled the people in the restaurant to go to the rear and took some money from their persons. The same youth shot and killed William Groce, a customer of the restaurant. The other bandit took money from the cash register. Then both escaped.

The robbery and shooting were promptly reported to the police. Those who had been present in the restaurant were examined at the precinct station house in the presence of a stenographer. Thorp, the manager, gave a description of the general appearance and build of the masked bandits. They were, so he said, both negroes of dark complexion. One was tall and one was short. "He had a soft face, well dressed, this tall fellow. Short fellow had a rough face." Promptly the police sent out a general police alarm for the apprehension of these men. The description of the men wanted was of necessity meagre. One of them has never been apprehended. A few nights after the robbery the defendant Roper was

arrested on the street, after being shot by police officers. On the chance that Roper might be one of the robbers, Thorp was summoned to look at the defendant while the defendant was in the operating room of the hospital awaiting surgical treatment for his wounds. Before the magistrate and at the trial Thorp positively identified the defendant as the tall robber with a " soft face " who had shot William Groce.

The indictment of the defendant and one " John Doe " for murder in the first degree charges, in common-law form, that the " said defendants in the County of New York  *  *  *  with force and arms, in and upon one William Groce  *  *  *  willfully, feloniously and of their malice aforethought did make an assault,  *  *  * giving unto him  *  *  *  one mortal wound of which  *  *  *  the said William Groce  *  *  *  did die." Thorp was the only eye witness of the crime who was produced by the prosecution. The People frankly admit that none of the others, if produced, could identify the defendant as one of the men whose faces were concealed by handkerchiefs while they robbed the restaurant. Thorp explained that at one time the handkerchief which covered the defendant's face slipped down and that thus he had opportunity to see the defendant's features while the handkerchief was being hurriedly readjusted.

The trial was conducted with eminent fairness, and we find no reversible error in the admission or exclusion of evidence or in the charge, if the case was tried and submitted to the jury on the proper theory. Perhaps there may be doubt as to Thorp's identification of the defendant. On that question the defendant has had a fair trial, and none of his substantial rights have been infringed by excess of zeal or fault of police, prosecuting attorney or trial judge. A majority of the court, at least, find that the verdict of the jury is not against the weight of evidence upon the issue presented to the jury. We

confine discussion in this opinion to the question whether the jury's finding of guilt on these issues supports the defendant's conviction of the crime of murder in the first degree.

Thorp's testimony establishes that a negro, whom he identified as the defendant on trial, shot and killed William Groce while he and another negro were engaged in taking money at the point of a pistol from the cash register of the restaurant and from the persons of those who were present in the restaurant. The defendant's age at the time of the homicide was not determined in the manner provided by section 817 of the Penal Law. Upon the preliminary examination of the jurors, the assistant district attorney stated to them: "The defendant Louis Roper at the time of the alleged commission of the crime by him was between fifteen and sixteen years of age." Testimony that the defendant was under the age of sixteen was uncontradicted. The case was tried and submitted to the jury upon the assumption that the fact that the defendant was at the time of the homicide under the age of sixteen carries no legal consequences in a trial for murder in the first degree. We are called upon to test the validity of that assumption in this case.

Only a child under the age of seven years is incapable as matter of law of committing a crime (Penal Law, § 816), though a child " of the age of seven years, and under the age of twelve years, is presumed to be incapable of crime, but the presumption may be removed by proof that he had sufficient capacity to understand " (§ 817). Even so, not every act or omission which, if committed by an adult, would be a crime, is a crime when committed by a child, for the Legislature has expressly decreed that " a child of more than seven and less than sixteen years of age, who shall commit any act or omission which, if committed by an adult, would be a crime not punishable by death or life imprisonment, shall not be deemed guilty of any crime, but of juvenile

delinquency " (Penal Law, § 2186). Murder in the first degree is punishable by death. Therefore, it is clear that a child of fifteen may be guilty of the crime of murder in the first degree. When guilt of a crime has been established, its penal consequences are the same for child and adult criminal. But guilt cannot be established without proof of every essential element of the crime and, since a felonious intent is an essential element of the crime of murder, guilt of a defendant can never be established without proof of such intent. Thus, the guilt of a defendant charged with murder in the first degree may depend upon his capacity to form the felonious intent. Then the fact that a defendant is under the age of sixteen may carry legal consequences.

" There can be no murder without evidence of malice and of a felonious intent and a depraved mind. The indictment was sufficient in form when it simply accused defendant of having killed the deceased ' willfully, feloniously and with malice aforethought.' On the trial it was necessary to prove such malice and willful and felonious conduct, and this necessity was satisfied in accordance with the provisions of the statute by showing that the homicide occurred while the defendant was engaged in the commission of another felony (*People* v. *Conroy*, 97 N. Y. 62, 68, 69; *People* v. *Giblin*, 115 N. Y. 196)." (*People* v. *Nichols*, 230 N. Y. 221, 226.)

Here, as in that case, the conviction rests upon a finding of the jury that a human being was killed by a person " engaged in the commission of another felony. True, the evidence is sufficient to support a finding that the homicide was committed by the defendant " from a deliberate and premeditated design to effect the death of the person killed," and a homicide committed in that way also would constitute murder in the first degree (Penal Law, § 1044) and might be proven under an indictment in common-law form. The jury, if such question had been presented to it, might have found that the defendant

formed such a deliberate design, though under the age of sixteen; but the jury here made no such finding, for no such question was presented to it. If the trial judge in his charge had left that question to the jury, he would have been bound to charge on the degrees of homicide, and the jury would have been free to find a verdict of guilt in lesser degree than murder in the first degree. He chose to do otherwise. He charged the jurors that they were concerned only with the question of whether a human being was killed during the commission of a felony in which the defendant was a guilty participant, and that their verdict must be either guilty of murder in the first degree or not guilty.

" We may not ' sustain a conviction erroneously secured on one theory on the conjecture that it would have followed just the same if the correct theory had been applied.' (HISCOCK, Ch. J., in *People* v. *Smith*, 232 N. Y. 239, 244.) A criminal, however shocking his crime, is not to answer for it with forfeiture of life or liberty till tried and convicted in conformity with law." (*People* v. *Moran*, 246 N. Y. 100, 105.) Certainly we may apply no other rule where the defendant, though perhaps a hardened offender, is still of tender age. The judgment may be sustained only if, in spite of his youth, the defendant's participation in a felony establishes his guilt of murder in the first degree.

The charge of the trial judge was fair and accurate, if the defendant's participation was with felonious intent. The crime of murder charged in the indictment is a single crime, whether committed by design or during the commission of an independent felony; " the independent felony like the deliberate and premeditated intent, being established solely for the purpose of characterizing the degree of the crime so charged, the evil mind or purpose inherent in the killing." (*People* v. *Lytton*, 257 N. Y. 310, 315.) The defendant may have participated in the robbery; but unless that participation was

with felonious intent he was not guilty of the felony, and if he was not guilty of the independent felony, participation does not evince " the evil mind or purpose inherent in the killing." (See *People* v. *Koerber*, 244 N. Y. 147.)

Sometimes a spirit of innocent mischief, sometimes evil associations, not of his own choice but forced upon him by family conditions, impel a child under the age of sixteen to commit acts which constitute felonies as defined by law. The State has adopted a humane policy in its treatment of a child under the age of sixteen who commits such acts. It does not, upon proof of guilt, fasten upon him the ineffaceable stain of conviction of guilt of a felony, nor subject him to imprisonment with adult offenders. For the child's benefit, as well as for the benefit of the State, it treats a child who commits acts which, if committed by an adult would constitute a felony, not punishable by death or life imprisonment, merely as a juvenile delinquent, an unfortunate ward of the State rather than a criminal. The law, in its mercy, demands that a child should be subject to such correction as may tend to remove the causes which have led the child to commit acts inimical to society; where it might demand that an adult committing the same acts should be visited with punishment of deterrent effect.

Doubtless at times the causes which have led a child into " juvenile delinquency " are too deep-seated to be removed by such corrective treatment as the State now offers. Perhaps at times " innate depravity " is more than a fiction. The Penal Law is not concerned with such abstractions. It decrees that the acts of a child shall, in all cases other than acts constituting a felony punishable by death or life imprisonment, be treated as if done without the " evil mind " which characterizes felonious intent, and each child must be given the opportunity to benefit by corrective treatment though he be unable or unwilling to avail himself of the benefit. The

law does not say that a criminal under the age of sixteen is not subject to punishment for a crime; it says that proof of acts which would establish guilt of crime if committed by an older person does not establish the guilt of a child under the age of sixteen years, of any crime, but only of juvenile delinquency.

These considerations must lead to a reversal in this case. The defendant can be convicted of murder in the first degree only upon a finding of " felonious intent." The verdict of the jury imports a finding that the defendant participated in the commission of a robbery, as defined by the statute, for the trial judge charged that without such finding the verdict must be not guilty. Upon the trial of a defendant over the age of sixteen years a finding of participation in a robbery, as defined by the statute, would import a finding of " felonious intent;" for robbery, in every degree, is a felony. Upon the trial of a child under the age of sixteen, the participation of a child in a robbery, or at least in a robbery in the second or third degrees, would not establish the guilt of a felony but only of a minor offense characterized as juvenile delinquency. Hence, it is plain that the defendant's conviction rests upon no finding of guilt of a felony and thus no finding of felonious intent, and the judgment must be reversed. (*People* v. *Moran, supra.*) That is true even though no exception was taken to the charge which raises such question. A child under sixteen can be guilty of murder in the first or second degrees where he kills a man with felonious intent, but such felonious intent is not established without both proof and finding of intent to kill or of *guilt of an independent felony* during which the homicide occurred.

The question of whether the defendant's participation in a robbery in the first degree might establish guilt of a felony is not now presented; for the trial judge charged the jury that they were not concerned with degrees of robbery, since robbery in every degree is a felony. It

might arise upon a new trial. At the time of the homicide and of the trial, robbery in the first degree and burglary in the first degree were punishable by imprisonment for not less than a specified term of years, and *no limit of the duration of the punishment was declared* in the statute. In such case the " court authorized to pronounce judgment upon conviction may, in its discretion, sentence the offender to imprisonment during his natural life, or for any number of years not less than the amount prescribed." (Penal Law, § 2191.) Perhaps crimes " punishable by death or life imprisonment," as those words are used in section 2186 of the Penal Law, applying to juvenile offenders, include any crime where a judge authorized to pronounce sentence may *in his discretion* sentence the offender to imprisonment for life. Doubtless similar words in other sections of the Penal Law were used by the Legislature with that intention. We do not now decide whether considerations of public policy and complications arising from the fact that upon a trial for burglary or robbery in the first degree a jury may convict of a lesser degree of crime, punishable only by imprisonment for a limited term, and constituting crimes of which a child cannot be guilty, might dictate a different construction of those words as used in section 2186. That question has now become academic, for by chapter 275 of the Laws of 1932, amending Penal Law, sections 407, 2125, a " limit of the duration of imprisonment is declared " in the punishment for burglary or robbery in the first degree.

Thus at the present time, even if not at the time of the original trial, proof that a child under the age of sixteen years participated in a robbery in the first degree cannot establish the child's guilt of a felony. Change in the punishment for that crime has the indirect result of removing the crime of robbery in the first degree from the category of crimes of which a child can be guilty if it ever was within that category. The effect is the

same as if the Legislature had expressly declared that no child under the age of sixteen years can be guilty of robbery in any degree, and that upon the trial of such child for murder in the first degree, "felonious intent" may not be predicated upon guilt of robbery. In the absence of a clause excluding from its provisions offenses previously committed, the law as amended applies in all trials held thereafter, even for offenses previously committed. (Cf. *Hartung* v. *People*, 22 N. Y. 95; same case, 26 N. Y. 167, and 28 N. Y. 400.)

Upon the new trial this defendant may be tried for murder in the first or second degrees committed through the killing of a human being with intent to effect his death. Such an action may be impelled by "evil mind" and felonious intent as evidenced by the criminal acts of the child, but not by acts which the Legislature has declared are not criminal when committed by a child. A person who with evil mind commits a crime may, in the interests of society, be punished even by death for the undesigned and unforeseen result of the crime. No person, certainly no child under the age of sixteen, is subject to death or life imprisonment because of the calamitous though undesigned result of acts which are not criminal in their inception.

The judgment of conviction should be reversed and a new trial ordered. (See 259 N. Y. 635.)

POUND, Ch. J. CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment reversed, etc.