## COURT OF APPEALS,
### Oct., 1908.

## THE PEOPLE v. WILLIAM S. BRASCH.
### (193 N. Y. 46.)

(1.) CONFESSIONS—PRELIMINARY EXAMINATION ON ADMISSIBILITY THEREOF —RIGHTS OF DEFENDANT.

Where the prosecution produce a witness to prove an alleged confession of a defendant charged with a crime, the latter may show, either by preliminary cross-examination of the proposed witness or by other evidence, that the confession was secured by improper means, and after the production of such testimony he is entitled to a preliminary ruling by the court on the admissibility of the alleged confession.

(2.) PRELIMINARY EXAMINATION—JURY NEED NOT BE EXCLUDED THEREFROM.

The court is not required to exclude the jury from such a preliminary examination; and, therefore, a request for a preliminary examination, " in the absence of the jury," might properly be denied as too broad.

(3.) SAME—ERRONEOUS DENIAL OF REQUEST FOR PRELIMINARY EXAMINATION—WHEN HARMLESS.

Where a witness, called to prove an alleged confession of the defendant, corroborated the evidence of a previous witness as to the legal character of the confession, and his direct examination affirmatively excluded the possibility that he knew of any act by which the confession was improperly induced, and, in addition, his cross-examination developed no conditions which would have warranted the trial judge in excluding the confession, a prior error of the court in denying a request for a preliminary examination of the witness will be disregarded on appeal as harmless.

(4.) SAME—EVIDENCE OF CONFESSIONS—OBJECTIONS THERETO.

Where a witness who had testified to a confession of the defendant and had not either on his direct or cross-examination disclosed any fact or condition which would have warranted the exclusion of the confession, an objection to his testimony, as a witness to a second confession, on the ground that it was a violation of the constitutional right of the defendant that he should not be required to testify against himself, does not fairly raise the question of defendant's right to a preliminary examination of the witness upon the admissibility of the proposed evidence.

(5.) SAME—DENIAL OF REQUEST FOR PRELIMINARY EXAMINATION.

Where defendant's counsel asked for a preliminary examination of

a witness called to prove àn alleged confession, and the court stated that he would permit the examination if counsel claimed that there were any threats or promises made or held out to the defendant sufficient to make the proposed evidence incompetent, and defendant's counsel declined to make any statement on that subject, a denial of the request for the preliminary examination was not erroneous.

**(6.) SAME—PRELIMINARY EXAMINATION—INDEPENDENT EVIDENCE AS TO ADMISSIBILITY OF CONFESSIONS.**

If a defendant on a criminal trial has independent witnesses or evidence of his own as to the character of certain alleged confessions about to be proved by the prosecution that he wishes to produce before the evidence of such confessions is received, he should make such fact plain to the court, and, where he fails so to do, he cannot be heard to complain on appeal that he was deprived of an opportunity to produce such witnesses or evidence.

**(7.) SAME—TRIAL FOR MURDER—PRELIMINARY EXAMINATION OF WITNESSES TO CONFESSIONS—WHEN RIGHTS OF DEFENDANT FULLY PROTECTED.**

The record of proceedings on the trial of a defendant indicted for murder, in which the prosecution introduced evidence of alleged confessions, and in which, it is claimed on behalf of defendant, that he was deprived both of the opportunity to cross-examine the people's witnesses and to produce independent evidence for the purpose of impeaching the alleged confessions, examined and *held*, that the rights of the defendant were fully protected, especially where, although it is difficult to say that any issue of fact was raised in regard to the character of the confessions and the circumstances that surrounded them, the court submitted the question whether the confessions were made under such circumstances as entitled them to be considered.

**(8.) SAME—CONFESSIONS—MAY BE CONSIDERED AS EVIDENCE OF CRIME CHARGED—CORROBORATING EVIDENCE.**

Under the statutes which respectively provide that " No person can be convicted of murder  *  *  *  unless  *  *  *  the fact of killing by the defendant, as alleged," is established as an independent fact " beyond a reasonable doubt " (Penal Code, § 181), and also that " a confession of a defendant  *  *  *  is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed " (Code Crim. Pro., § 395), such confession may be. considered in establishing the commission of the crime, and where there is additional evidence which reasonably tends to prove the crime and thus corroborates the confession, such evidence is sufficient to satisfy the requirements of the statute, although the evidence in itself and independent of the confession, would be insufficient to establish the crime.

(9.) SAME—SUFFICIENCY OF EVIDENCE TO SUSTAIN CONVICTION FOR MUR-
DER.

The evidence on the trial of a defendant indicted for murder exam-
ined and *held*, that certain alleged confessions were made by him under
such circumstances as entitled them to be proved in the case; that they
were corroborated by additional evidence, as required by the statute,
and that such confessions and additional proof together established the
commission of the crime charged beyond any reasonable doubt so as to
sustain a judgment of conviction.

(10). SAME—GOOD CHARACTER—REQUEST TO CHARGE—WHEN PROPERLY
DENIED.

A defendant on a criminal trial is not entitled to have the court
charge a presumption of good character in the absence of any evidence.
On a trial for murder, therefore, where defendant has introduced tes-
timony of doubtful weight as to his previous good character, a request
to charge that his character should be considered good by the jury,
" especially in the absence of proof  *  *  *  to the contrary," is
properly denied, since to so charge would withdraw the consideration
of the evidence on the subject from the jury.

APPEAL from a judgment of the Supreme Court, rendered
December 26, 1906, at a Trial Term for the county of Mon-
roe, upon a verdict convicting the defendant of the crime of
murder in the first degree, and from an order denying a mo-
tion for a new trial.

The facts, so far as material, are stated in the opinion.

*Walter J. Scott*, for appellant.    The court should have
allowed the whole question of the competency of the testimony
concerning the confessions to have been determined prelimin-
arily.    The preliminary cross-examination of the witness
Rowe was not sufficient. *Willett v. People*, 27 Hun, 474; *Peo-
ple v. Kurtz*, 42 Hun, 345; *People v. Fox*, 121 N. Y. 453;
*People v. White*, 176 N. Y. 349; *People v. Soto*, 49 Cal. 67;
*People v. Ah Hon*, 34 Cal. 223.    The alleged confessions of
the defendant made to the police officers were not sufficient to
warrant his conviction, and as the case lacks " additional proof
that the crime charged has been committed," the *corpus delicti*

was not proved. *Redd v. State,* 63 Ark. 466; *Anderson v. State,* 31 S. W. Rep. 673; *Hennessey Case,* 18 Wend. 147; *People v. Parker,* 2 Park. Cr. Rep. 141; *People v. Badgley,* 16 Wend. 53; *Pitts v. State,* 43 Miss. 481; *Stringfellow v. State,* 26 Miss. 157; *People v. Palmer,* 109 N. Y. 110; 2 Best on Presumption, 780; *Robinson v. State,* 12 Mo. 592; *Matthews v. State,* 55 Ala. 194; *Priest v. State,* 10 Neb. 394; *John v. State,* 59 Ala. 37. The court should have charged as requested as to evidence of good character. Defendant's request to charge was proper, and the charge as made by the court was not a substantial compliance therewith. *People v. Bonier,* 179 N. Y. 322; *Cancemi v. People,* 16 N. Y. 506; *Remsen v. People,* 43 N. Y. 9.

*Howard H. Widener, District Attorney (Charles B. Bechtold, of counsel),* for respondent. The voluntary character of the confessions was established before they were given in evidence. The objection made by the defense before their reception, that they were obtained through fear produced by threats, was shown by the preliminary examination and the cross-examination of the witnesses to be without foundation, and further, the court submitted their competency to the jury as a question of fact, although there was absolutely no proof in the case to show that they were obtained through fear produced by threats. *People v. Meyer,* 162 N. Y. 357; *People v. Mondon,* 103 N. Y. 211; *People v. Cassidy,* 133 N. Y. 612; *People v. Kennedy,* 159 N. Y. 34; *People v. White,* 176 N. Y. 331. The defendant's confessions were amply corroborated, and the *corpus delicti* proved by the finding of the body drowned, the confessions of the defendant and the other additional evidence in the case. *People v. Carr,* 3 N. Y. Cr. Rep. 578; *People v. Jaehne,* 103 N. Y. 182; *People v. Badgley,* 16 Wend. 53; *People v. Deacons,* 109 N. Y. 374; *People v. Burness,* 178 N. Y. 429; *State v. Lamb,* 28 Mo. 218; *People v. Elliott,* 106 N. Y. 288;

*People v. Patrick,* 182 N. Y. 131. No error prejudicial to the defendant was committed by the court in the charge as to evidence concerning good character. *People v. Bennett,* 37 N. Y. 117; *People v. Pekarz,* 185 N. Y. 470.

HISCOCK, J.:

The defendant has been convicted of murdering his wife, Roxanna Brasch, at Rochester, on the evening of June 16, 1906, by pushing her into the waters of the Erie canal, where her body was found on the evening of June 19, 1906.

There was no question on the trial that death had resulted from drowning, and the evidence was entirely consistent with the conclusion that the woman got into the water at about the time and place when and at which the defendant was charged with having pushed her in. The serious question which remained was whether she was thrown into the canal by the defendant or whether she got there through some other agency. No eye witnesses of the alleged murder were sworn, the evidence on which the defendant was convicted consisting largely of alleged confessions, and the principal questions presented on this appeal are, whether the defendant's rights were properly protected in connection with the admission of evidence of these confessions and whether the latter were sufficiently corroborated by other testimony so that the requirements of the statute on that subject were satisfied.

The history of the defendant prior to the date of his wife's death and the record of his movements on and after that particular day are of so much importance in solving some of the questions of law above outlined that I shall review them at some length.

At the time of the alleged murder the defendant was a stalwart man about twenty-three years of age and a mechanic by trade. The deceased was twenty years old and of slight figure. These parties had become married to one another January 20,

1904, and within a short time thereafter the deceasel had given birth to a child of which it is conceded the defendant was not the father.   They did not live happily together and in June, 1905, entered into a formal though illegal agreement of separation.   On the day this agreement was executed defendant seems to have turned his wife out of doors and then he went to Cleveland, Ohio.   Shortly thereafter he became acquainted with a woman named Gilmore, and holding himself out as a widower under an assumed name he asked her to marry him after she had procured the divorce which she was then seeking. In September, 1905, these people commenced living together as husband and wife, and while this relationship continued the Gilmore woman discovered that the defendant still had a wife living.   He, however, assured the former that he had an agreement of separation and would procure a divorce, and he did, as a matter of fact, consult lawyers in reference thereto.   April 21, 1906, without any explanation or notice, defendant deserted the Gilmore woman and returned to Rochester, where apparently some sort of a reconciliation was agreed upon between him and his wife, inasmuch as they commenced living in the same rooms, but not, as claimed by defendant, on intimate terms.

After defendant's desertion of her, Mrs. Gilmore discovered that she was pregnant by him, and she came to Rochester on Friday, June 15th, 1906, going directly to the defendant's house.   Defendant greeted her in an affectionate manner, assured her that he did not have anything to do with his wife and proposed that she remain until the following Wednesday, when he would return with her.   On the following day, after going to her work, defendant's wife did not return to his home, but at about three o'clock that afternoon she appeared at the home of her sister-in-law, where she stayed until evening, when defendant came after her, as will hereafter be more particularly stated.   That same afternoon defendant arranged

with Mrs. Gilmore that if she would remain over Sunday he would return to Cleveland with her, and he packed up his things preparatory to leaving.

That evening the defendant, Mrs. Gilmore and the defendant's brother went out together, and after doing various other things the former engaged a room for Saturday and Sunday night. Quite late in the evening the defendant, who had seemed worried and for which condition he gave some innocent excuse, left Mrs. Gilmore and his brother, stating that he would be gone an hour or two in order to perform some work. He returned after about an hour or an hour and a half, spending that and the following night with Mrs. Gilmore and going on to Cleveland Monday.

It is the theory of the prosecution that the defendant murdered his wife on Saturday evening when he was absent from Mrs. Gilmore, as stated above. During this period he called at the home of his sister-in-law for his wife and the last that was seen of the latter alive was as she went away with her husband. The latter never gave any notice of his wife's death or any innocent explanation of her disappearance while in his company. The following Monday he and Mrs. Gilmore went to Cleveland, where he renewed his suggestion of marriage, and when the woman replied that he could not marry until he got a divorce, the defendant said, " We will wait until we hear from George " (his brother), and which remark, the prosecution urges, is significant of an expectation by defendant that he would soon get news which he could make public of his wife's death. As already stated, three days later the body of the deceased was found in the canal, in a condition and at a point which corresponded with defendant's confessions, and soon thereafter the defendant and Mrs. Gilmore were apprehended at Cleveland.

There is practically no question that all of the facts thus far stated are fully established by evidence independent of defend-

ant's confessions, but the exact history of what occurred between the deceased and the defendant after they went away together, as before stated, is dependent upon such confessions, to which I shall now refer.

They were made to the police authorities and were two in number. Aside from various preliminary prevarications and evasions and details which it is not necessary to recapitulate, the material portion of each was to the effect that after meeting his wife at the house of her sister-in-law, defendant and she walked around for awhile, finally coming to the canal, and that as she walked on the edge of the latter in a somewhat secluded neighborhood he pushed her into the water, where, after brief struggles, she sank and was drowned, the defendant then returning to the room where the Gilmore woman was.

The evidence as actually given with respect to these confessions indicates that they were made deliberately, voluntarily and without forbidden inducement, and that they were entitled to the great consideration in establishing the guilt of the defendant which, I shall assume, they in fact received from the jury. The question, however, is whether that full opportunity which the law requires was given to the defendant to impeach them by showing that in fact they were secured by improper influences.

When the People produced a witness for the purpose of proving an alleged confession by defendant, before such evidence was received the latter was entitled to show if he could either by preliminary cross-examination of the proposed witness, or by other witnesses or testimony, that the alleged confession was secured by improper means, and after the production of such testimony, if any, he was entitled to a preliminary ruling by the court on the admissibility of the proposed evidence. *People v. Rogers,* 192 N. Y. 331.

The defendant's counsel urges that the trial court erroneously deprived him both of the opportunity to cross-examine the Peo-

ple's witnesses and also to produce independent evidence for the purpose of impeaching the character of the alleged confessions, and these claims will be considered in the order stated.

Evidence of the two alleged confessions was given by three detectives, respectively named Rowe, Courneen and Fitchen, two being present at each one. Rowe was sworn first, and there is no basis whatever for any claim that defendant's counsel did not have a full opportunity to cross-examine him in regard to the character of the confession before evidence thereof was given, and this witness, both on his examination by the People and by defendant's counsel, fully and unequivocally stated that the confession was freely made after warning to the defendant that whatever he said would be used against him, and that it was not induced either by hope of reward or by fear or other improper causes.

Courneen was next placed on the stand, and he gave evidence of both of the alleged confessions. Before he testified to the first one already testified to by Rowe, the following took place:

(By the district attorney): " Q. Go on and tell us all that took place in there as you recall it.

" Mr. Scott: The same objections that were made at the opening of the testimony offered by Inspector Rowe, and I ask for a preliminary examination of this witness on the same subject, and ask that at the time such preliminary examination be had it be had in the absence of the jury. Denied. Exception."

There is no rule which required the court to exclude the jury from a preliminary examination of this witness, and we might very well dispose of defendant's exception at this point on the ground that his request was too broad, and, therefore, properly denied.

If, however, we should assume that the court should have disregarded that part of the request relating to the exclusion of the jury and should have granted a preliminary examina-

tion of the witness, and erred in not doing so, I should still feel that the defendant suffered no real harm from the error. The witness corroborated the evidence of the witness Rowe in respect to the legal character of this confession, and his direct examination affirmatively excluded the possibility that he was a party to or knew of any act not detailed by which the confession was improperly induced. Moreover, when defendant's counsel entered on the regular cross-examination of the witness he examined him fully in regard to what occurred on the occasion in question, going with much detail into everything that was said or done there, and especially cross-examining the witness for the purpose of showing that some promise was made to the defendant, and that the latter was not warned that he was not obliged to say anything and that he had a right to consult an attorney. A review of this cross-examination convinces one that counsel fully covered this subject on the regular cross-examination of the witness, and that such cross-examination did not develop any conditions which would have warranted the trial judge in excluding the evidence of the witness.

As this same witness was about to testify in regard to the second alleged confession the following occurred:

(By the district attorney):  " Q. What talk took place between you and the defendant or between him and the detective (Fitchen) ?  Objected to as before and that testimony like this is contrary to the constitutional rights of the defendant, which prescribes that he is not to be compelled to testify against himself."

There was no preliminary ruling on this objection and no exception when the witness proceeded to give his testimony. Furthermore, this objection did not fairly raise any such question of defendant's rights as is now being argued, and still further what was said about the cross-examination of this witness in regard to the first confession applies also to the second one.

When the detective Fitchen was sworn defendant's counsel said: " I ask for a preliminary examination on the subject of competency (of testimony to alleged confessions) and that the same be in the absence of the jury." Thereupon there ensued a colloquy between the court and the defendant's counsel to the effect that the former would allow the latter preliminarily to examine the witness with respect to the confession if counsel claimed " That prior to the statements to this officer there were any threats made or promises held out by the defendant sufficient to make the evidence of any confession made by him incompetent in the case."

The final passages in this colloquy were as follows:

" The Court: If you think you can show by a preliminary examination of the officer that the evidence would be incompetent I will allow you to have that preliminary examination.

" Mr. Scott: I don't know. I do not want to make any statement to the court on that subject.

" The Court: Then I think I will deny your application and give you an exception."

I think no error was committed at this point by the court. A consideration of all that was said makes it clear that all it required of defendant's counsel as a condition to a preliminary examination was some assurance that he hoped or believed that he could accomplish some legitimate and useful purpose by such a preliminary cross-examination, and when the counsel felt unwilling to give such assurance the trial judge was entirely warranted in proceeding with the main examination.

I next come to the second branch of defendant's complaint, that he was deprived of the opportunity on a preliminary investigation of the character of the confessions to produce independent witnesses or evidence of his own, it being somewhat cautiously intimated on the argument before us that such were within his reach.

The only point at which anything occurred which could be

possibly construed as indicating a wish on the part of counsel
to produce evidence of his own on this subject was when the
first witness, Rowe, was called. At this time the following
occurred:

" Mr. Scott: Defendant demands that the question of the
admissibility of any alleged confession be examined into and
determined preliminary to the main question of what those
confessions may be.

" The Court: I will allow you to examine this witness pre-
liminarily if you wish.

"Mr. Scott: I wish to have on the record a demand that the
whole question be threshed out at this time preliminarily, not
only upon the preliminary examination of this witness, but by
the offering of whatever testimony on the subject I may wish
to present.

"The Court: I will allow you to examine the witness now.
Whatever further I will allow I will determine after you ex-
amine this witness."

There then occurred the preliminary cross-examination to
which reference has already been made. At the end of this
cross-examination defendant's counsel stated: "I am through
with this witness at present. Does your Honor rule that the
preliminary examination must cease?

"The Court: I see no occasion for anything further at
present."

To this observation or ruling of the court no objection or
exception was made or taken by counsel, who appeared to ac-
quiesce in the disposition thus made.

In view of the evidence disclosing the circumstances under
which defendant's alleged confessions were made, no one being
present but the detectives and defendant, who did not take
the stand, and in view of the unwillingness of defendant's coun-
sel to claim that he would be able to show in connection with
Fitchen's examination that defendant's confessions were im-

properly extorted, it is very difficult for us to believe that he was prepared to offer any independent testimony at the time he closed his cross-examination of the witness Rowe, as already detailed. But however this may be, it is certain that if he then did have such evidence which he desired to produce before evidence of the confessions was introduced he ought to have made this plain to the court and he cannot now complain if the latter did not understand from what occurred that he desired to produce such testimony.

In conclusion upon this subject, I believe that the rights of the defendant were fully protected. It was the duty of the court preliminarily to rule on the admission of evidence of the confessions. It was proper in case an issue of fact arose in regard to their character and the circumstances which surrounded them to submit such issues to the jury at the close of the entire case. It is difficult to say that any issue of fact was raised in this case, and yet the court with an abundance of caution and of fairness to the defendant did submit to the jury the question in substance whether the confessions were made under such circumstances as entitled them to be considered. I think this was more rather than less than the defendant was entitled to.

I pass next to a consideration of the contention made in behalf of the defendant that the *corpus delicti* was not sufficiently proved, and which contention also has some relation to the confessions.

It will be well in such consideration first to state the rules applicable to this subject which now have been formulated in statutory enactments.

Section 181 of the Penal Code provides: "No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed and the fact of killing by the defendant, as alleged, are each established as independent facts; the former by direct proof and the latter beyond a reasonable doubt."

6

Section 395 of the Code of Criminal Procedure provides: "A confession of a defendant   *   *   *. is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed."

The death of the deceased concededly has been sufficiently established "by direct proof," her dead body having been found and fully identified. But it is insisted that the other essential fact, "of killing by the defendant," has not been sufficiently established. In support of this general claim defendant's counsel by exceptions to the charge as made and by requests to charge, which were refused, has presented and now argues the propositions, *first,* that the criminal agency of the defendant under the first section cannot be established even in part by his confession, and, *secondly,* that if such confession could be utilized at all for the purpose of establishing any such criminal agency it is not corroborated or supplemented by "additional proof" within the meaning of the latter section quoted. This last proposition, reduced to its most favorable form, is that there is no proof in addition to his confession tending directly and specifically to prove the fact that defendant placed his hand on his wife and pushed her into the canal; that the dead body does not give any sign that the deceased was pushed into the canal by the defendant as distinguished from jumping or accidentally falling into the water, and that, therefore, it was error for the court to hold in effect that the finding of such body might be considered as a fact in corroboration of defendant's confession and tending to establish that he was guilty of the crime charged.

The court has already so far fully rejected the first proposition, that a defendant's confession may not be at all considered in establishing the commission by him of the crime charged, that we need only refer to the cases on that point. *People v. Jaehne,* 103 N. Y. 182, 199; *People v. Beckwith,* 108 N. Y. 67, 74.

In like manner I think that both reason and authorities are opposed to the second proposition, that in this case the facts proved outside of the confessions, including the finding of the dead body, do not satisfy the requirements of the statute, even though such additional evidence does not amount to direct proof of defendant's murderous act.

Let us very briefly summarize part of such additional evidence with reference to the question whether it does not in a general but very conclusive way corroborate defendant's confessions.

The defendant had married a woman who was not calculated to preserve his respect, say nothing of his affection. He became tired and at times abusive of her. Under the guise of a formal agreement of separation he really abandoned her and became infatuated with another woman. He deceived this last woman in regard to his marriageable situation, and under promise of marriage lived with her, and got her into a position where he was morally bound to take care of her. For some reason he abandoned her, and in a qualified degree returned to his wife. On being followed by his paramour he showed much affection for her, and proposed to go away with her and marry her. Certainly here was a situation which converted the deceased into an obstacle and furnished a motive for getting rid of her.

He temporarily left his companions at a time and for a period corresponding with the time of the murder as fixed by his confession, and during that time the deceased is seen for the last time alive going away with him alone and in a locality not far from that of the murder as fixed by the confession.

Within a short time he flees from the city with his paramour, renewing his promise of marriage and giving neither then nor at any subsequent time any alarm or any innocent explanation of his wife's whereabouts or disappearance. Three days later her body is found dead by drowning at about the place where he said he had drowned her.

It is true that the additional evidence does not picture the defendant in the very act of pushing his wife into the water, and it does not describe any particular mark on her body decisively proving that she was pushed in rather than that she fell in.   Very probably it does not so conclusively establish the crime charged that we should be willing to affirm a conviction based on it alone.   But that is not the question before us.   It is not necessary that it should be sufficient to convict defendant independent of the confesion.   The question is whether there is any evidence in addition to the confession reasonably tending to prove the crime and thus corroborate the confession.   And it is impossible to answer this question in the negative when we confront the practically undisputed facts which I have already sufficiently stated.   It would shock common sense to say in the light of the confession that all of these circumstances do not in any degree tend to prove a crime, and that the requirements of the statute have not been satisfied, and that the defendant should be discharged because some other impossible evidence has not been produced.

I next turn to what I regard as pertinent authorities sustaining the foregoing views.

In *People v. Jaehne (supra)* the defendant was convicted of the crime of bribery.   The main evidence produced on the trial to sustain the charge was that of confessions made by the defendant.   It was claimed there, as here, that there was no proof in addition to the confessions as required by the statute sufficient to warrant a conviction.   There was indeed no evidence outside of the confessions directly proving the specific act of bribery. Under these circumstances the court said: "There was evidence given on the trial showing that the Broadway railway grant was passed under circumstances which, while they may possibly have been consistent with an innocent intention on the part of the defendant and others, nevertheless indicated the operation of unusual motives and influences, and when interpreted in the

light of the confession are strongly corroborative of its truth. It is insisted that under the statute the *corpus delicti* must be proved, or evidence given tending to prove it, wholly independent of the confession, and that no evidence was given which, disconnected with the confessions, had a legal tendency to prove the body of the crime. * * * We are of the opinion that when, in addition to the confession, there is proof of circumstances which, although they may have an innocent construction, are nevertheless calculated to suggest the commission of crime, and for the explanation of which the confession furnishes the key, the case cannot be taken from the jury for non-compliance with the requirement of the statute. The words of the statute, 'additional proof that the crime charged has been committed,' seem to imply that the confession is to be treated as evidence of the *corpus delicti;* that is, not only the subjective criminal act, but also the criminal agency of the defendant; in other words, as competent proof of the body of the crime, though insufficient without corroboration to warrant a conviction."

In *People v. Deacons* (109 N. Y. 374) there was presented to the court for review a judgment of conviction in a murder case which was based largely on a confession of the defendant. In that case it was claimed that the finding of the body of the murdered person was not such additional proof as was required by the Code. The court said, in answer to this contention, however: "That is a mistaken construction. The crime charged was the murder of Mrs. Stone. The fact was conclusively proved by the finding of her dead body with the unmistakable marks of a murder committed. The meaning of the Code is that there must be some other evidence of the *corpus delicti* besides the confession, the purpose being to require some proof of the death and the violence which caused it, outside of and beyond the mere confession of the prisoner. In a case where the body is not found, and there is no proof of violence

or of death except by the confession of the accused, that confession will not suffice. There must be some other evidence of the existence of the criminal fact to which the confession relates. The Code but repeats the pre-existing rule that 'there must be proof *aliunde* of the *corpus delicti,* although such proof need not be conclusive.' "

In that case it is true that the dead body of the victim did, as stated by the court, bear "unmistakable marks of a murder committed," whereas in this case the body bears no marks indicating whether the deceased got into the water through one agency or through another. But what was said by the court is broad enough to indicate that the dead body found under the circumstances disclosed in this case itself furnished some additional and corroborative evidence without such marks.

The case of *People v. Badgley* (16 Wend. 53) was a case of alleged forgery where a conviction was based largely on confessions of the defendant. The note alleged to have been forged was destroyed so that neither the original nor a copy could be produced, and the person whose name was alleged to have been forged was dead, and there was no evidence directly establishing the forgery by the defendant outside of his confession. There were, however, a number of facts indirectly tending to establish that he was guilty as confessed. Under those circumstances the court wrote as follows: "Full proof of the body of the crime, the *corpus delicti,* independently of the confession, is not required by any of the cases; and in many of them slight corroborating facts were held sufficient. Here there are a number of facts, and some of them strong and convincing. The highest and best evidence in the power of the prosecutor was produced, and no effort was made by the accused to explain, where explanation was easy and complete upon the assumption of innocence. There is much circumstantial evidence of the forgery of the note, which in connection with the confessions,

brings the mind to a satisfactory conclusion of the defendant's guilt—a conclusion justified by abundant authority."

What was thus said was entirely pertinent, for as was stated in the *Jaehne Case* the present statutory enactment embodies what was the prior rule of the common law.

The case of *People v. Jones* (123 Cal. 65) presented for review a conviction of arson. The evidence upon which the defendant had been convicted consisted largely of his confessions. The rule in California requiring evidence in addition to the extrajudicial confessions of the defendant was substantially the same as that which we have been considering, and it was claimed that sufficient additional evidence was lacking. The court in construing this claim lays down the following rule: "In the case before us, I think the evidence, though weak and unsatisfactory in particulars capable of more explicit statement, is sufficient to justify the admission of the confessions. The buildings were in fact burned, and the circumstances tended in some degree to indicate that the fire was of incendiary origin, and therefore the confessions were in some degree corroborated."

In *Flower v. U. S.* (116 Fed. Rep. 241, 247) the court, in a case of embezzlement, discussing the principles involved in the case before us, approves the rule: "A conviction cannot be had on the extrajudicial confession of the defendant unless corroborated by proof *aliunde* of the *corpus delicti*. Full, direct and positive evidence, however, of the *corpus delicti* is not indispensable. A confession will be sufficient if there be such extrinsic corroborative circumstances as will, when taken in connection with the confession, establish the prisoner's guilt in the minds of the jury beyond a reasonable doubt."

The case of *State v. Lamb* (28 Mo. 218) presented for review a judgment of conviction of the defendant for murdering his wife by drowning her in the Mississippi river. The conviction was largely based on the extrajudicial confessions of the defendant, and it was claimed "that independent of the confes-

sion of the prisoner there was no proof that Sarah Lamb was dead; that she came to her death by any crime or that she was killed in the manner charged in the indictment; that the body of the offense is not proved *aliunde* the confession, which is essential." In that case there was no eye-witness of the murder and the dead body itself was not recovered, but there were, as in this case, circumstances tending to corroborate the confession of the defendant and to indicate that he had committed the murder, and which circumstances, in some respects, are not dissimilar to those presented here. While the rule requiring proof of death as an independent fact may not have been as stringent as in this State, still the court fully recognizing the necessity for additional evidence corroborative of the confession, held that the conviction should be affirmed, saying: "Although the dead body has not been found, and although no witness swore that he saw the perpetration of the murder, yet the circumstances extrinsic to the confession, and established by other evidence, are so strong that they cannot fail to satisfy any unbiased mind that the accused is guilty of the crime of which he has been convicted."

Reaching the conclusion that the defendant's confessions were made under such circumstances as entitled them to be proved in the case, and that they were corroborated by additional evidence as required by the statute, we need have no hesitation in reaching the further conclusion that the confessions and the additional proof together established the commission of the crime charged beyond any reasonable doubt, and that the judgment should not be disturbed on the ground that the verdict is against the weight of evidence. Quite to the contrary, the proofs as a whole so force the mind to the conviction that defendant murdered his wife, that it would be an act of mere imagination or conjecture to attempt to account for the latter's death in any other manner than by the criminal agency of her husband.

Finally, it is urged that the court committed error in charging as it did and in refusing to charge as requested upon the subject of previous good character of the defendant.

Defendant produced witnesses for the purpose of establishing his previous good character, but the evidence of such witnesses, so far as they were disinterested, was substantially confined to their personal experience or observation, and was quite ineffective. The People produced no specific evidence upon this point, and at the close of the main charge the following occurred:

"Mr. Scott: In the same connection I ask the court to charge that the presumption from proof of previous good character of the defendant is entitled to great weight, to be given weight by the jury, as it will often be sufficient to turn the scale and produce an acquittal.

"The Court: In this case I think the jury should give such weight to the testimony given in regard to the defendant's good character as they think that testimony is entitled to, bearing in mind always the knowledge and information the several witnesses stated they had on that subject; and in so far as that testimony tends to show or satisfy you of the previous good character of the defendant, you should give him the full benefit of it in your consideration of the same.

"Mr. Scott: I wish to except to the form of the last remarks of the court and your Honor's refusal to charge as requested; and I ask in the same connection that your Honor charge that the presumption, in the absence of any proof, is that his former character, before this crime was charged against him, was good.

"The Court: I so charge.

"Mr. Scott: That it should be so considered by the jury in this case, especially in the absence of proof adduced by the district attorney to the contrary.

"The Court: I decline to charge that. Exception."

I think that the instructions given to the jury for their guidance in case they should be satisfied from the testimony of the

previous good character of the defendant substantially complied with the request made by his counsel, and that if in any detail they fell short of what the law required the counsel should have called this to the attention of the court instead of taking a general exception.

It is not quite clear what the request meant which was refused, but apparently its meaning was "that it (that is, his character) should be so considered (good) by the jury in this case especially in the absence of proof adduced by the district attorney to the contrary." It was not error to deny such request. The defendant was not entitled to have the court charge a presumption of good character in the absence of any evidence; and this being so, this request required the court to charge that the defendant's evidence did, as matter of law, establish his previous good character, thus withdrawing the consideration of the evidence from the jury. The defendant was not entitled to such instructions on the evidence which was given.

The rules upon this subject of good character and evidence thereof were recently laid down by this court in *People v. Pekarz* (185 N. Y. 470).

Judge VANN there wrote as follows: "Upon the trial of every indictment the defendant is presumed to be innocent. If a *prima facie* case is made out against him, he may show that his character was good, because such evidence bears upon the probability whether a person with such a character would commit the crime charged. * * * When such evidence has been presented it is the duty of the court, if properly requested, to instruct the jury to consider it and to tell them the effect that it may have. * * * When, however, no evidence has been given upon the subject by the defendant, who alone can open the door, his character is not in issue and he is not entitled to the instruction 'that the presumption that his character is good, must be considered by the jury.' It is only affirmative proof of good character, quite independent of any presumption that

one's character is good until shown to be bad, th'at bears on the probability of guilt and entitles the accused to an instruction that his character must be taken into consideration.   *   *   *
The presumption of good character, when unsupported by affirmative proof, is practically an abstraction, and need not be charged, even if requested."

I do not deem it necessary to discuss the other exceptions which, like those already considered, are zealously and forcibly argued by defendant's counsel.   Each one of them has been examined with that care which it deserves in such a case as this, and it is sufficient to say that no one of them presents any such error as calls for a reversal of the judgment appealed from, and such judgment, therefore, must be affirmed.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER and CHASE, JJ., concur; WILLARD BARTLETT, J., concurs in result.

Judgment of conviction affirmed.