THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EDWARD A. DEACONS, Appellant.

Upon the trial of an indictment for murder proof of the finding of the body of the person charged to have been murdered, with unmistakable marks thereon of a murder committed, is sufficient "additional proof" to meet the requirements of the provision of the Code of Criminal Procedure (§ 395), providing that the confession of the defendant in a criminal action shall not be sufficient to warrant a conviction "without additional proof that the crime charged has been committed."

Upon the trial of an indictment for murder, it appeared that the defendant was a "tramp," as that class of persons is described in the act of 1885 (Laws of 1885, § 2, chap. 490.) It appeared that he entered the house of S., the deceased, without permission, and as soon as discovered was ordered out; that he refused and barred the way, preventing S. from going for help, and laid his hands upon her shoulder or seized her by the arm. *Held*, that the evidence authorized the submission to the jury of the question as to whether the defendant was, at the time of the alleged murder, engaged in the commission of a felony as defined by the provision of said act (§ 4), declaring that "any tramp who shall enter any building against the will of any owner or occupant thereof under such circumstances as shall not amount to burglary, * * * or shall threaten to do injury to any person, * * * when such offense shall not now be punishable by imprisonment in the state prison, shall be deemed guilty of felony."

A person may "threaten," within the meaning of said statute, by acts as well as words.

The test as to what is threatening conduct is not what, in fact, the owner or occupant of the house believed, but what from the intruder's action and conduct he had reasonable ground to believe.

At the time of the alleged murder the defendant, according to his own testimony, was a month over sixteen years of age. *Held*, that he was not brought within the provision of the act which excepts from its application persons under sixteen years.

A person not an expert is competent to testify that a spot or stain he has observed was blood.

*It seems* where the question is as to whether the spot is human blood or that of an animal it is one of science requiring the testimony of experts.

(Argued April 12, 1888; decided May 4, 1888.)

APPEAL under chapter 493, Laws of 1887, from judgment of the Court of Oyer and Terminer, in and for the county of

Monroe, entered upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material to the questions discussed, are set forth in the opinion.

*W. Henry Davis* for appellant. This case, upon careful reading, will be found to contain no element of murder, either in the first or second degree, but a case of manslaughter, if anything. (Penal Code, §§ 183, 184, 189; *People* v. *Hayes*, Id. 582; *People* v. *Devine*, Id. 594; *Darey* v. *People*, 10 N. Y. 120; 2 Parker, 606; *Stokes* v. *People*, 53 N. Y. 164; 1 East's Pleas of the Crown, 238, 241; Foster's Crown Law, 295; *United States* v. *Mingo*, 2 Curtis' C. C. 1; *Atkins* v. *State*, 16 Ark. 568; Wharton's Law of Homicide, 186; *State* v. *Norris*, 1 Hay. 429; *People* v. *Garretson*, 2 Wheeler's C. C. 347; *United States* v. *Thayer*, 2 id. 503; *United States* v. *Wittberger*, 3 Wash. C. C. 515; *State* v. *Yarbrough*, 1 Hawks, 78: *State* v. *Jackett*, Id. 210; *Preston* v. *State*, 25 Miss. 383; 1 Hale P. C. 453; *Rex* v. *Hayward*, 6 Car. & P. 157.) The evidence of Raines and Atwood, as to the blood stains, was improperly received. (*Rochester* v. *Chester*, 3 N. H. 349, 365; *Heald* v. *Thing*, 45 Me. 392, 394; *Nelson* v. *Sun Mut. Ins. Co.* 71 N. Y. 453; *Jones* v. *Tucker*, 41 N. H.      ; *Buffum* v. *Harris*, 5 R. I. 250; *State* v. *Phair*, 48 Vt. 366, 377; 1 Greenl. Ev. § 440; *Jones* v. *White*, 11 Humph. 268; *State* v. *Clark*, 15 S. C. [N. S.] 403, 408; *Allen* v. *Hunter*, 6 McLean, 303, 310; *Dickenson* v. *Fitchburg*, 13 Gray, 546, 555; *Clark* v. *Rockland Water Power Co.*, 52 Me. 68, 77; 1 How. Ct. of App. Cas. 52, 124; 14 Gratt. 652.) A verdict improperly influenced by misdirection of the court will be set aside upon a case made, although no exception has been taken at the time of the charge. (*Archer* v. *Hubbell*, 4 Wend. 514; *Harris* v. *Wilson*, 1 id. 511; *Wardell* v. *Hughes*, 3 id. 418; *Highland Bk.* v. *Wynkoop*, Hill & Den. 243; *Benedict* v. *Johnson*, 2 Lans. 94; *Whele* v. *Haviland*, 42 How. 399; 17 Barb. 276, 538; 48 id. 548; 15 N. Y. 524; 14 Abb. 51; 17 Mass. 534; Hilliard

on New Trials, 205, 208 ; *Gur* v. *Archer*, 2 Barb. 420.) In this case motive would seem to be of very considerable import-ance, and the only source from which a motive has been drawn through the evidence comes from the defendant him-self, and if true, exculpates him from the crime for which he has been convicted.     If false, how can any motive be found in the circumstances of the case for the commission of the crime.   (*People* v. *Lake*, 1 Parker's Crim. Rep. 539, 540 ; *People* v. *Bennett*, 49 N. Y. 138; *Kennedy* v. *People*, 3 Park. 312; *People* v. *Hendrickson*, 8 How. 412 ; *Jeffords* v. *People*, 5 Park. 559.)   The only evidence in the case as to the commission of the crime being that given by defendant establishes only a case of manslaughter.  (*Hicks' Case*, 1 C. H. Rec. 66 ; *People* v. *Hennessey*, 15 Wend. 147; *People* v. *Badgley*, 16 id. 53 ; 49 N. Y. 137; Code of Crim. Pro. § 527, as amended, 1887.)

*George A. Benton* for respondent.   Defendant being engaged in the commission of a felony, within the language, meaning and purpose of the statute, if death ensued in conse-quence of that felony, the offense is brought directly within the definition of the crime of murder in the first degree. (*People* v. *Cole*, 2 N. Y. Crim. Rep. 108 ; *Buel* v. *People*, 78 N. Y. 492, 497 ; *People* v. *Rector*, 19 Wend. 569 ; *People* v. *Van Steenburg*, 1 Park. 39 ; *Cox* v. *People*, 80 N. Y. 500.) The jury had a right to look at defendant to determine his age.   (Penal Code, § 19.)   No clause of the state or federal Constitutions is violated by the tramp act of 1885 (Chap. 490). (*People* v. *Marks*, 99 N. Y. 377, 386 ; *In re Jacobs*, 98 id. 98 ; *In re Bayard*, 25 Hun, 596 ; *McCready* v. *Virginia*, 94 U. S. R. 391, 395 ; *People* v. *McCarthy*, 45 How. 97.)

FINCH, J.   The conviction of the prisoner is sought to be reversed upon two principal grounds ; one that his confessions of the murder should have been excluded ; and the other that his offense was less in degree than that established by the ver-dict of the jury.

There was no error in admitting those confessions. They were made to the officers having him in charge, to the public prosecutor, to the reporters of the newspapers, and in some singular verses which he seems to have composed of his own volition, and without suggestion from any quarter. The Code of Criminal Procedure (§ 395) provides that the confession of the defendant may be given in evidence "unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney that he shall not be prosecuted therefor." Not only does the testimony of those to whom the confession was made show that no threats at any time were used to extort a confession, but the prisoner himself, when upon the stand as a witness and wholly denying his crime, made no such complaint, and stated no fact, even remotely, tending to establish a threat. He says that one of the officers charged him with the murder; that they impressed upon his mind the idea that they had evidence enough to convict; and hinted that if he confessed he might possibly escape with a conviction of manslaughter or even obtain a reward. He thus swears to his own conclusions or inferences, but does not repeat or specify a single remark or expression used by anyone which involved a threat. The officers, on the other hand, state fully the whole conversation in each instance, and show conclusively that no threats were made. The district attorney explicitly refused to make any promises whatever, and it is quite apparent that neither threats nor promises induced the confession.

It is claimed, however, that the verdict rested mainly upon it, and should not have done so for another reason. The Code of Criminal Procedure, in the last clause of the section above referred to, further provides that the confession shall not be sufficient to warrant a conviction "without additional proof that the crime charged has been committed;" and it is claimed that the finding of the body was not such additional proof. That is a mistaken construction. The crime charged was the murder of Mrs. Stone. That fact was conclusively proved by

the finding of her dead body with the unmistakable marks of a murder committed. The meaning of the Code is that there must be some other evidence of the *corpus delicti* besides the confession, the purpose being to require some proof of the death, and the violence which caused it, outside of and beyond the mere confession of the prisoner. In a case where the body is not found, and there is no proof of violence or of death except by the confession of the accused, that confession will not suffice. There must be some other evidence of the existence of the criminal fact to which the confession relates. The Code but repeats the pre-existing rule that "there must be proof *aliunde* of the *corpus delicti*, although such proof need not be conclusive." (*People* v. *Badgley*, 16 Wend. 53.)

Upon that confession and the other facts proven in the case the verdict of murder in the first degree must be sustained. While the prisoner admitted himself to be utterly regardless of the truth, denouncing his own statements by the score as unmitigated lies, yet if we take his own version of the murder as in all respects true, the necessary deliberation was manifest and fully established. Admitting, then, for the present, that he struck Mrs. Stone with his club and then choked her so that he broke both branches of the hyoid bone in her throat until he thought she was dead, and did this under a sudden passionate impulse because she used harsh words and struck him in the face, that does not explain what followed. Deliberation marked every subsequent step, and a deliberation utterly inconsistent with any remaining passionate impulse. If there had been rage, it was satisfied by the revenge accomplished, and was supplanted by the cool and deliberate effort to avoid the consequences and escape detection. He puts a cloth under the victim's head to prevent blood stains on the floor; he observes the trap-door leading into the cellar and opens it to hide the body; he lifts Mrs. Stone in a manner which he says he knew how to do without getting blood stains upon himself; he carries her down the stairs, where she slips from his hands; at that moment she revives, for he admits a struggle at that point; he sees she is not dead, and he then

strangles her with a cloth tied about her neck. He says she fought like a tiger. That is quite probable. The blood spot at the foot of the stairs indicates the struggle. The unfortunate woman was fighting for her life and the prisoner for her death, as the means of his own safety. It was no longer a passionate impulse or sudden burst of rage. That had run its course; there had been abundant time for the passion to cool, and ample opportunity to deliberate. What that deliberation was we see in every step he took, and there is no reasonable or adequate explanation of his conduct, except that he strangled his victim for the deliberate purpose of screening himself by her death from the detection which threatened him when she revived. When Mrs. Stone was apparently dead, after the combined blow and choking, the prisoner says, in words chosen by himself: "I stood gazing at her with terror and with dread." That is so natural that it may easily be believed, and it marks the appearance of new emotions consequent upon the subsidence of momentary passion, and growing out of the silent contemplation of the seeming death and the imminent danger which that passion had occasioned. The jury were warranted in believing that, if his own account was true, he strangled the deceased for the deliberate purpose of escape and concealment, and when she was not dead and her life might have been preserved.

But the jury were not bound to believe the explanation of a man who, coolly and under oath, acknowledged himself to be an unmitigated liar. The evidence pointed to another explanation. A woman does not ordinarily when alone in her house strike a stranger and a tramp in the face unless some insulting purpose manifested on the occasion makes anger overcome fear. The accused did bar her effort to leave the house, and did seize her by the arm or put his hand upon her shoulder before she struck him at all, for so much he admits. It is claimed by the prosecution that the murder was committed while the prisoner was engaged in an attempt at rape. It is not fitting that we repeat the repulsive details which bear upon this inquiry, but the jury which listened to them, and

to his own written account of his plot to seize and assault one Annie Kelly, and reflected upon the facts, would be quite justified in believing that lust rather than passion was the motive for the assault, and that the murder was accomplished while he was engaged in the commission of a felony.

The court, however, submitted another question to the jury bearing upon the degree of the crime, and of which the prisoner's counsel complains. The act of 1885 (Chap. 490) describes and defines who shall be deemed tramps. They are " persons who rove about from place to place begging, and all vagrants living without visible means of support who stroll over the country without lawful occasion." (§ 2.) The prisoner fully came within that description. His own account of himself, and all that we know of him from other witnesses, points unmistakably in that direction, and there is not a word or a fact in the case to the contrary. The trial judge did not err in saying he was a tramp, for there was no dispute about it. By section 4 of the act it is provided that " any tramp who shall enter any building against the will of any owner or occupant thereof, under such circumstances as shall not amount to burglary,  * * *  or shall threaten to do any injury to any person or to the real or personal property of another when such offense is not now punishable by imprisonment in the state prison, shall be deemed guilty of felony." Upon this statute the trial judge submitted to the consideration of the jury the question whether the murder was not effected while the accused was engaged in the commission of a felony. That he entered the house occupied by Mrs. Stone against her will is quite manifest. He came in without permission or invitation, and as soon as discovered was ordered out. He was there not only without her consent, but against her consent, and persisted in his intrusion after being notified to depart. Beyond that was the question whether before the killing he threatened a personal injury. The jury inquired if threatening words were necessary and the court answered, in substance, that conduct or actions might menace the safety of the occupant as well as words. The prisoner's counsel main-

tains that the learned judge gave as the test of what was threatening conduct the inquiry whether Mrs. Stone believed he was threatening her. That is a misconstruction of the charge. What was said was that if the conduct was such as to give Mrs. Stone reasonable cause to believe that a personal injury was intended that was enough. The test was not what she, in fact, believed, but what from the intruder's action and conduct she had reasonable ground to believe, and, to make the meaning plainer, the judge illustrated it by the case of one who points a pistol at another or draws his fist as if to strike. In other words, the court declared that there might be a threatening gesture as well as a threatening word. The charge in this respect was, therefore, not erroneous, and the jury who remembered that the prisoner barred the way out of the house and prevented Mrs. Stone from going for help, and laid his hands upon her shoulder or seized her by the arm, had before them facts which warranted a finding of a threatened personal injury. There was not only in the conduct of the prisoner the threat of an assault, but the fact of an assault by grasping her person before the deceased struck him in the face and before the purpose to kill was formed and the effort to kill began.

Reference was made to the age of the prisoner as affecting section 6 of the statute, which excepts from the application of the enactment persons under sixteen years. At the date of the murder he was was at least a month older than that according to his testimony, and his own declarations and his appearance warranted a conclusion that he was some years older. The argument that he could not become a tramp within a month after reaching sixteen has no force, especially as to one who was a tramp, in fact, when he reached the age which brought him within the operation of the law.

The objections to evidence were somewhat numerous and have all been examined without discovering any error prejudicial to the prisoner. Those relating to the evidence of Raines and Atwood, which identified certain spots of blood which they saw as being blood, were pressed upon our attention,

and should be considered. Mr. Raines testified that within three days after the homicide he discovered a spot on the surface of the trap-door, and cut it out and gave it to Mr. Atwood, and that he examined the spots on the cellar bottom. He was asked whether these last were blood. His answer was that he examined them under the microscope, and compared them with blood from his own finger, and the appearances were similar. He thus stated simply facts, giving no opinion, and expressly admitted that he could not determine whether the spots were human blood. Mr. Atwood described himself as engaged in the business of fire insurance, but as having done a little in chemistry and something more in microscopy. He examined the splinter under the microscope, and swears that he ascertained the stain upon it to be blood. He swears to this not as an opinion, but a fact directly founded upon his own observation.

In each instance the evidence was objected to as incompetent, and the objection is defended here upon the ground that the witnesses were not experts. It was not needed that they should be. That a spot or stain is blood may be proved by any person who has observed it and is able from such observation to state the fact. (*People* v. *Gonzalez*, 35 N. Y. 61; *Greenfield* v. *People*, 85 id. 82.) The first of these cases discusses the question fully and establishes the rule. That the observation of the witnesses was aided by a microscope only strengthened the minuteness and care of their observation. If the effort had been to distinguish between human blood and that of some animal, the question would have been one of science and have required the application of very great skill and knowledge. No such effort was made.

Upon the whole case we are satisfied that justice has been done. The prisoner's confessions manifest a knowledge so accurate and detailed of the house occupied by Mrs. Stone, and the furniture and utensils in it, and the situation of and marks upon the dead body, as to be explainable only upon the theory that he was the author of the crime. His pretense that

he gathered the facts from a newspaper is very strongly disproved.

The judgment should be affirmed.

All concur.

Judgment affirmed.