Nathan R. Sobel, J.
The defendant is a 15-year-old boy charged in the indictment with murder in the first degree. He is alleged to have “ thrown ” the nine-year-old female deceased from the roof of a project building in downtown Brooklyn, and intentionally (“ design ” murder) to have caused her death.
The instant pretrial motion is addressed to the indictment. It is requested that the court permit an inspection of the Grand Jury minutes or in the alternative that the court dismiss the indictment.
The short affidavit (2 pages) presented by defense counsel makes three points:
(1) That the evidence before the Grand Jury is insufficient to warrant the indictment (Code Grim. Pro., § 251).
(2) That there is insufficient corroboration, i.e., “ additional proof ” to support the confession. (Code Grim. Pro., § 395.)
(3) That the District Attorney failed and neglected to advise the Grand Jury of its authority or duty or right to transfer this case to the Juvenile Court (Code Grim. Pro., § 312-c).
The People merely submit the Grand Jury minutes for inspection by the court.
All of the issues raised are substantial. Before I discuss them in detail, the issues should be briefly stated.
The indictment, although in common-law form, charges either a “ design ’’murder (PenalLaw, § 1044, subd. 1) or a “felony ” murder (Penal Law, § 1044, subd. 2). But a 15-year-old defendant may only be convicted of “ design ” murder. He is deemed incapable of committing a “ felony ” murder. Therefore if only the latter is established before the Grand Jury, the indictment must be dismissed.
The foregoing issue complicates another more serious issue in the case. Whatever may be the tests with respect to confession corroboration in other jurisdictions, and there are a wide variety of such tests, we are commanded by our statute (Code Crim. Pro., § 395) to utilize the “corpus delicti” test. Ordinarily in a motion addressed to the sufficiency of the Grand Jury evidence, I am not permitted to “ weigh ” the “ additional proof.” But here since some “additional proof” supports only the commission of the felony underlying the “ felony ” murder — a *361 crime of which this defendant cannot be convicted — I am required to examine into all the additional proof both qualitatively and quantitively. In short, under the corpus delicti test, I must determine whether “ additional proof ” which tends to establish the corpus of a crime of which this defendant cannot be convicted suffices to establish the corpus of the only crime of which he can be convicted, to wit, “ design ” murder. This is the main issue in this case.
Lastly, I must determine whether the District Attorney must advise the Grand Jury of its right to recommend to the court a transfer of the indictment to the Family Court (Code Grim. Pro., § 312-c).
Basic to a determination of all of the issues is the evidence before the Grand Jury.

The Evidence before the Grand Jury.

There was read to the Grand Jury a detailed confession (37 pages) taken from the defendant both at the police station and during a re-enactment of the crime.
The crime was committed on December 4, 1962 at about 12:30 p.m. The defendant was taken into custody on December 5, 1962 at 3:00 p.m. The circumstances of this “arrest” are peculiar. A person “ unknown ” approached a police officer at a school crossing and pointed out the defendant, presumably as a “ suspect ” of the “ crime ” since: the police officer immediately began questioning him whether he was in the neighborhood of the project the previous afternoon. Not satisfied with defendant’s “ denials,” the officer turned him over to detectives.
What occurred during the next six hours is not in the record. The District Attorney arrived at 9:15 p.m. of December 5. He commenced the taking of the written “ confession ” at that time. The written statement and the defendant’s statements during the re-enactment were painstakingly and fairly reported. The statement was completed on December 6 at 12:05 a.m., three hours after it was commenced. The defendant was then formally arrested. There is no evidence as to when he was arraigned.
The defendant relates that he had that morning an “ early excuse” pass from school (confirmed). He left school at 9:00 a.m. and wandered from place to place. At one friend’s home he had some whiskey. He went to the “ project ” to visit a friend. Not finding him home, he went to another building of the same project (190 York St.). There quite by accident he ran into the nine-year-old female decedent. The time is not specifically stated. He had never known or seen the girl before. *362 He forced her into the elevator and took her to the 13th floor. He forced her to accompany him up one flight to the interior landing leading to the roof.
He states that his original purpose was to take some money from her but when they got to the 14th floor landing, he forced her to take off her clothes which included a coat, a blue sweater, a white blouse and underthings. He then “tried” to have intercourse with her. He testified he was unsuccessful. “I put it in her”; “It wouldn’t go all the way”; “ not even an inch”; “ and really, I wanted some money so I got up * * * and started going through her coat pockets and everything”; * * * “ she tried to go through the roof to ge.t out the other exit ”; “I grabbed her and picked her up and she started saying she was going to call the cops ”; “ So after she started telling she’s going to tell the cops and everything I got scared so I picked her up and held her over the ledge like I was going to drop her. She said, ‘ I’m going to tell the cops ’ and I started shaking like I was going to fall but I didn’t want to hurt her. She tried to run like that and I picked her up and shook again and she kept saying it and she fell. She slipped.”
* * *
(Later: -— [in the same statement])
‘ ‘ Then I held her over the ledge like I was going to drop her, trying to make her say she wasn’t going to tell the cops because I wasn’t going to hurt her or anything.” * * * “ She said she wasn’t going to tell. [The defendant put her back on the roof.] “ Then she ran and said she was going to tell and I managed to get her.” [The defendant then held her over the ledge again] “ and shook her and she kept saying it — that she was going to tell the cops.” * * * “She fell ” * * * “ I didn’t mean to but she dropped.”
He relates that the next morning he met a man on a bus who questioned him. “ The man said he saw me on the bus before but I was never on the bus before. ” * * * “ This cop called me * * *. He said: “ Some of my friends want to talk to you.” He was taken to the police precinct and questioned in the squad room. “ Yes, I was lying at first but then I couldn’t keep on lying because I wasn’t getting no place so I just told them the truth.”
In the repeated questioning and during the re-enactment we find also the following: “I picked her up and she kept saying I am going to tell the cops. I picked her up and tried.to scare her and held her over the ledge. I was kind of shaking, like, so she would think she’ll fall. She said she won’t tell and started *363 running. She yelled, ‘ I’m going to tell7 and I caught her and held her and brought her back and held her up again. I had her like this and was shaking her and she went off. * * * I had her so she couldn’t fall and I was shaking her and she slipped but I didn’t want to do nothing though.”
This is essentially the total contents of the confession.
I comment, although it is not relevant to my decision, that we have here no substantial internal evidence of either the truth or falsity of the confession. Often we find within the confession, evidence which the accused could not possibly know unless he had committed the crime and which therefore supports internally the truth of the confession. We have no such evidence here. Often we find within the accused’s statements evidence which is inconsistent with the known facts and which tend to establish internally the falsity of the statements. We have none here.
Externally we have absolutely nothing. No one testifies that the deceased was wearing on that day the clothes which the defendant describes in detail in the statement. Nor is there any evidence externally that such clothes or any clothes were found on the 14th floor landing. There was other physical evidence (not mentioned in the foregoing summary of the statement) which could have been, but was not, found on the 14th floor landing.
However the “ external ” or “ internal ” evidence to support the truth of the “confession” is for the Grand Jury as the sole arbiter of the “weight” to be given the confession. It is not for this court on this pretrial motion. (See my decision in People v. D’Andrea, 26 Misc 2d 95, 96-98.) But before a trial court, the “ confession ” must be thrown on the scale and the narrative examined and reconciled with other evidence produced. The coherence of the confession internally and externally are mentioned only for that reason. On this motion these factors count for nothing — not for, not against, the defendant. And I surely do not intend to convey any opinion concerning the truth or falsity of the confession.
I now examine the “additional proof” (Code Grim. Pro., § 395).
We have before the Grand Jury, which can serve as “ additional proof ” of the corpus delicti, external to and independent of the confession (which the statute requires), the testimony of the Medical Examiner.
*364 I have scrupulously examined his testimony. All of the injuries which he found could he attributed to an “ accidental ’ ’ fall from the roof as well as a fall caused by “ criminal agency, ’ ’ (discussed infra) except the following: “Inside the vagina there are two small linea lacerations extending only through the nicosa [sic] with petechial [sic] hemorrhage. * * * Further back there were two similar nicosa with lacerations.”
This “ additional proof” (disregarding the conflict with the defendant’s statement that penetration was “ one inch ”) at best furnishes additional proof only of the corpus delicti of the underlying felony of rape, a crime which under the law a 15-year-old defendant is incapable of committing.
But we do also have as possible “ additional proof ” of the corpus delicti of ‘ ‘ design ’ ’ murder, the circumstance of the finding of the nude body of the child. This serves to disprove the possibility of accident. It is independent of and external to the confession. It surely serves to corroborate the confession. But is it “additional proof ” of the corpus delicti of design murder as required by section 395? This is discussed infra.
I
“ Design ” v. “ Felony ” Murder.
People v. Roper (259 N. Y. 170) holds that a defendant under the age of 16 may not be convicted of felony murder. Some years ago, on a pretrial motion to dismiss, I reached the same conclusion in People v. Porter (54 N. Y. S. 2d 3) with respect to two codefendants and an opposite conclusion with respect to a third defendant who struck the fatal blow. I held with respect to the first two that no possible view of the evidence could establish “ design ” murder but with respect to the third defendant who struck the fatal blow, I held that there was some view of the evidence, however remote, which could justify conviction of design murder.
Parenthetically only, I note that the statute (Penal Law, § 2186) upon which Roper (supra) is predicated, has been much amended. The amendments do not change the basis underlying the reasoning of Roper and that case is still controlling law. One amendment provided that a “ child ” under 15 is incapable of committing any crime including murder. A 1956 statute (ch. 919) permits a child over 15 and under 16 to be “ charged ” with design murder in the same manner as an adult unless the case is transferred by the court to a Juvenile Court (now Family Court). And by virtue of the same amendment, such a 15-year-old may be permitted to plead to manslaughter or assault or upon trial the court may charge these lesser crimes when the *365 evidence warrants. (Cf. People v. Murch, 263 N. Y. 285 [1934].)
In summary, today a 15-year-old child may not be charged or convicted of 1 ‘ felony ’ ’ murder. He may only be ‘1 charged ’ ’ with design murder (including probably murder in the second degree; see People v. Lubchuk, 218 N. Y. S. 2d 348 and Lubchuk v. County Court, 31 Misc 2d 922) but he may be “ convicted ” of any degree of homicide or assault where circumstances warrant.
But, again parenthetically, in view of the defendant’s contention concerning “transfer” of this case to the Juvenile Court, I point out that the foregoing amendments removed the “ risk ” inherent in prosecuting “ children ” in the adult courts. Before the amendment a 15-year-old could be found guilty of “design” murder or not guilty (People v. Murch, 263 N. Y. 285, supra). If the People failed to prove “ design ”, i.e., intent to kill, the defendant went free. Today such failure does not defeat the prosecution. Thus the incentive which formerly existed to transfer these cases to the Juvenile Court no longer exists.
But the prosecution may not indict for murder with the expectation of proving only manslaughter. The evidence before the Grand Jury must establish design to kill, i.e., to take life. If it establishes only felony murder, the indictment must be dismissed. If it establishes only manslaughter, the indictment must be dismissed.
I now consider the evidence before the Grand Jury to determine whether it establishes a design or intent to kill.
I find that there is a possible view of the evidence from which the Grand Jury was justified in concluding that the underlying felonies of robbery or rape had “terminated” at some point during the criminal adventure. (People v. Smith, 232 N. Y. 239; People v. Ryan, 263 N. Y. 298; People v. Lunse, 278 N. Y. 303; People v. Dewey, 18 A D 2d 1125; Coleman v. United States, 295 F. 2d 555.)
With respect to such evidence which tends to establish the necessary element of design or intent to kill, I am precluded on this pretrial motion from “ weighing ” such evidence (People v. D’Andrea, 26 Misc 2d 95, 96-98, supra and cases cited) if any such evidence exists.
It is clear that the only evidence from which such design or intent can be found is in the ‘ ‘ confession ’ ’. The ‘1 brutality ’ ’ of the crime measured by its consequences is here not evidence of intent (cf. People v. Furlong, 187 N. Y. 198, 210; People v. Barber, 115 N. Y. 475, 488; People v. Davis, 18 A D 2d 644) because as consistent with the defendant’s claim of “ accident ” as “ design ”. For the same reason “ design ” cannot be found *366 in the presumption that a defendant intends the natural and probable consequences of his act (cf. People v. Agron, 10 N Y 2d 130; People v. Cooke, 292 N. Y. 185; People v. Conroy, 97 N. Y. 62; People v. Breen, 181 N. Y. 493), for throughout the “ confession ” the defendant states that the dropping of the child was accidental and not intentional.
At points, however, in the confession, particularly in response to questions, the answers concerning the “ accidental ” dropping may be considered equivocal.
Of course, it is recognized that this “ confession ”, like most confessions, may be largely or wholly self-exculpatory. But true or false, self-serving or not, it is the only evidence in the case and must be considered in that light.
“ The grand jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would * * * warrant a conviction by the trial jury ’ ’ (Code Grim. Pro., § 251). I am required under the law to presume (what is generally not the fact) that a Grand Jury under proper instructions on the law, found from the evidence an intent to kill. (People v. Glen, 173 N. Y. 395; People v. Sweeney, 213 N. Y. 37.) If it did, I must again presume (what is probably not the fact) that it did so from that portion of the confession which is to a degree equivocal on whether the dropping was accidental or intentional.
I indulge in these presumptions with great reluctance for I would “ guess ” that little of the law was explained to the Grand Jury. The Grand Jury probably speculated as to what probably happened and “ felt ” that the act was probably intentional. But this is a far cry from the proof which will be required on the trial. (People v. Woltering, 275 N. Y. 51, 61.)
At the trial, the People will, from the confession, prove motive from the rape and the threat of the victim to “ tell the police ”. From the confession, the People will prove presence at the scene and opportunity. But the very same confession will disprove the essential element of intent. (People v. Leyra, 1 N Y 2d 199; People v. Taddio, 292 N. Y. 488; People v. Weiss, 290 N. Y. 160; cf. People v. Bretagna, 298 N. Y. 323; People v. Porter, 54 N. Y. S. 2d 3.)
It is obvious from the foregoing that I do not believe that a trial jury can “ convict ” of design murder on the basis of the evidence before the Grand Jury.
But the Court of Appeals has expressly stated: “ That a trial jury might not convict on this evidence is not our concern. The Legislature has specifically relegated the question of whether a trial jury would return a conviction on this evidence *367 to the judgment of the G-rand Jury ”, (People v. Eckert, 2 N Y 2d 126, 129.)
On motions of this kind the indictment cannot be dismissed unless found upon illegal evidence or incompetent evidence or without evidence (People v. Glen, 173 N. Y. 395, 400, supra; People v. Vaccarella, 257 App. Div. 461; People v. Bob, 233 App. Div. 94).
The issue whether the degree of proof required before the Grand Jury is the same as upon a trial is dealt with specifically by Judge Breitel in a note (p. 161) appended to his opinion in People v. Howell (3 A D 2d 153, affd. 3 N Y 2d 672). He concluded: 1 ‘ On any view, however, whether evidence before a G-rand Jury warrants a conviction, given some evidence of each of the elements of the crime, sometimes referred to as a prima facie case, it is now quite clear that such determination is one to be made exclusively by the Grand Jury.”
Basic to this reasoning is the probability that in the trial, additional evidence may be produced to supplement the prima facie case.
The principle that “ the grand jury is the sole arbiter of the credibility of witnesses and of the weight to be given to the evidence” (People v. D’Andrea, 26 Misc 2d 95, 98, supra) is based on sound logic. But in practice it is unfortunately pure fiction.
I rule that there is “ some ” evidence to warrant a finding of intent to kill. I may not, even though I believe such evidence is insufficient, dismiss the indictment.
II
“ Additional Proof ” (Code Grim. Pro., § 395).
Section 395 of the Code of Criminal Procedure provides that ‘1A confession of a defendant * * * is not sufficient to
warrant his conviction, without additional proof that the crime charged has been committed.” The provision was included in the first Code (1881) and merely repeats the common-law rule (People v. Deacons, 109 N. Y. 374, 378).
We have many “corroboration” statutes in our code — accomplice testimony (§ 399), unsworn testimony of children (§ 392), testimony of prosecutrix in certain sex crimes (Penal Law, §§ 71, 1455, 2013, 2177, 2460). All of these, either by explicit provision or by construction require corroborating evidence which tends to connect the accused with the commission of the crime.
This, however, is not true of section 395. Our Court of Appeals has recently repeated (People v. Reade, 13 N Y 2d 42, *368 45): “ The purpose sought to be served by this requirement — that there be evidence of the corpus delicti apart from the confession— is, of course, to avert ‘ The danger that a crime may be confessed when [in fact] no such crime — has been committed by anyone ’. (People v. Lytton, 257 N. Y. 310, 314.) ” (See, also, to the same effect Smith v. United States, 348 U. S. 147.)
In short, the danger to be averted is that an accused may confess to an imaginary crime rather than a real crime. If that is all, it is not much. Our common experience, although concededly infrequent, is that when voluntary but false confessions-are made they are to real crimes but crimes committed by others. This is the experience of the police, and the court with much publicized crimes (and with the Executive in connection with publicized executions). Medical literature has a term for this kind of “ compulsion ” and expresses the view that children are more susceptible than adults. This “danger” (of false confessions to real crimes) the statute does not avert.
All jurisdictions, except a very few (see Commonwealth v. Di Stasio, 294 Mass. 273) have such confession “ corroboration ” requirements by statute or by decisional law. The various “ tests ” interesting as these may be, need not be discussed, except to state briefly that some jurisdictions (a minority) simply require independent corroboration of the truth of the confession while others (a majority) require independent evidence external to the confession to establish the corpus delicti. (But see Opper v. United States, 348 U. S. 84; Smith v. United States, 348 U. S. 147; State v. Yoshida, 44 Hawaii 352; also cases discussed in Ann. 45 A. L. R. 2d 1316 et seq. for the law in other jurisdictions.)
The corpus delicti test is commanded in New York by the terms of the statute — ‘ ‘ without additional proof thal the crime charged has been committed ” (People v. Roach, 215 N. Y. 592, 600). Within the corpus delicti test however there are many variations all concerned with whether the whole corpus delicti must be proved externally or part externally and part internally. These variations in that test exist between the jurisdictions and also within single jurisdictions including New York.
Part of that problem is caused by the failure of the courts to notice that some crimes have a tangible injury (which can be isolated as a corpus delicti) while others an intangible corpus or none at all. The corpus delicti (not to be confused with proof of death in homicide, Penal Law, § 1041) is tangible in all violent crimes, homicide, assault, robbery. It is also often tangible in property crimes, arson, burglary, larceny, receiving, etc. It is intangible in perjury, bribery, corruption, tax eva *369 sion, etc. (Proof of the corpus in intangible crimes often involves necessarily proof of the defendant’s complicity — see Smith v. United States, 348 U. S. 147, 153, 154, supra.) This latter distinction is mentioned because it has resulted in some rather general language in cases having an intangible corpus which might indicate that the “additional proof” need only serve to corroborate the truth of the confession (cf. People v. Jaehne [a bribery prosecution], 103 N. Y. 182, 199, “ are strongly corroborative of its truth ”). But the law is clear that “ additional proof ” which serves only to corroborate the truth of the confession and does not corroborate the corpus delicti is insufficient. (People v. Clark, 228 App. Div. 670; People v. Di Gregario, 205 App. Div. 629; People v. Cuozzo, 292 N. Y. 85; People v. Roach, 215 N. Y. 592, supra; cf. State v. Johnson, 31 N. J. 489; State v. Lucas, 30 N. J. 37.)
Among the violent crimes, 1 ‘ corroboration ’ ’ problems are most often encountered: — in homicides when the victim’s body contains no marks of violence or where such marks are as consistent with death by accidental means as with death by criminal agency; in infanticide cases where the issue is whether the child was stillborn or alive or as in homicide cases where death is as consistent with accident as with criminal agency (State v. Johnson, 95 Utah 572; Commonwealth v. Lettrich, 346 Pa. 497; Warmke v. Commonwealth, 297 Ky. 649), in arson cases where the fire often consumes its incendiary origin (People v. Reade, 13 N Y 2d 42, supra, and arson cases cited).
Only the homicide cases in New York need to be discussed. The corpus delicti test in homicide cases requires proof independent of and external to the confession that the death was caused by the criminal agency of someone.
In People v. Deacons (109 N. Y. 374 [1888]) the defendant confessed the design murder of a Mrs. Stone. The body had the marks of violence. The court said (pp. 377-378): “ The crime charged was the murder of Mrs. Stone. That fact was conclusively proved by the finding of her dead body with the-unmistakable marks of a murder committed. The meaning of the Code is that there must be some other evidence of the corpus • delicti besides the confession, the purpose being to require some proof of the death, and the violence which caused it, outside of and beyond the mere confession of the prisoner. In a case where the body is not found, and there is no proof of violence or of death except by the confession of the accused, that confession will not suffice.” (Italics supplied.)
Except for the last sentence that decision states the law in this jurisdiction. The ruling was followed in People v. Fanning *370 (131 N. Y. 659), People v. Pullerson (159 N. Y. 339), People v. Burness (178 N. Y. 429) and recently in People v. Conde (16 A D 2d 327). In all of these cases the body of the victim had the unmistakable marks of the violence which caused death.
In People v. Roach (215 N. Y. 592 [1915]) the defendant confessed the design murder of a neighbor. The court followed the Deacons rule holding that not only did the body bear marks of violence but that fact was conceded at the trial. The decision is significant only in that it discussed the corpus delicti test (p. 600): “In this state the statute referred to above has put at rest any uncertainty that may have existed upon this subject and codifies the rule that there must be proof in addition to the confession as to the corpus delicti.” (Citing cases.)
In People v. Brasch (193 N. Y. 46 [1908]) the defendant confessed that he had killed his wife by pushing her into a canal. There were no marks of violence on the body. Cause of death was as consistent with accident as with criminal agency. There was much independent evidence apart from the confession to support the truth of the defendant’s confession. The defendant and his wife had quarreled bitterly; he had a paramour; he “predicted” to the paramour that his wife would soon die; after the crime he ran away with his paramour. All of this served to support the truth of the confession. It did not however meet the corpus delicti test. The court struggled and decided (pp. 60-61): “ It is true that the additional evidence does not picture the defendant in the very act of pushing his wife into the water, and it does not describe any particular mark on her body decisively proving that she was pushed in rather than that she fell in. Very probably it does not so conclusively establish the crime charged that we should be willing to affirm a conviction based on it alone. But that is not the question before us. It is not necessary that it should be sufficient to convict defendant independent of the confession. The question is whether there is any evidence in addition to the confession reasonably tending to prove the crime and thus corroborate the confession. And it is impossible to answer this question in the negative when we confront the practically undisputed facts which I have already sufficiently stated. It would shock common sense to say in the light of the confession that all of these circumstances do not in any degree tend to prove a crime, and that the requirements of the statute have not been satisfied, and that the defendant should be discharged because some other impossible evidence has not been produced.”
The Brasch court turned for authority for this reasoning to Jaehne (103 N. Y. 182, supra), a bribery case, for which crime *371 there is no tangible corpus delicti and indeed on the Jaéhne facts no corpus delicti at all. As noted (supra), Jaehne used “ the corroboration of the truth of the confession test” rather than the “corpus delicti” test. The Brasch court quoted Jaehne (p. 61): “The words of the statute, ‘ additional proof that the crime charged has been committed,’ seem to imply that the confession is to be treated as evidence of the corpus delicti * * * in other words, as competent proof of the body of the crime, though insufficient without corroboration to warrant a conviction.”
This is of course precisely what the statute does not say. Any justification for Brasch lies not on the law but on the facts. There was compelling evidence of the trustworthiness of the confession. The court was reluctant to free an obviously guilty defendant. (I point out that no such compelling evidence exists in the instant case.)
The leading case in this State and Nation is People v. Cuozzo (292 N. Y. 85, supra [1944]) one of the earlier opinions by Chief Judge Desmond. The opinion discusses all of the cases. Referring to Brasch (p. 93) the court said: “Any expressions in People v. Brasch or People v. Jaehne, supra, which seem to suggest the less stringent rule, must be read in the light of the statements in those very opinions that the records in those cases contained very strong circumstantial evidence outside the confessions, not of the truthfulness of the confessions in some detail or other, but of the commission of the crimes charged in the indictments. For recent cases in this court strictly applying the rule of section 395 see [citing cases] ”.
I regard this as a factual explanation of the test of Brasch rather than a legal justification.
Cuosso on its facts bears some similarity to the case in issue. Cuozzo, a mentally deficient “child” of 25, confessed to the killing of a young lady some three years before the confession. Cuozzo in his confession related that he had raped the young lady and after the “ termination” of the rape while walking her home struck her on the head and placed the body on the railroad tracks. The marks caused by the trains removed any trace of criminal agency with the result that the death was “ closed ” as accidental. Three years later, in connection with another investigation, Cuozzo confessed this earlier crime.
Judge Desmond did not face the problem of the Brasch court for internally the confession was not trustworthy. There were many inconsistencies.
He held (pp. 93-95): “In the present case * * * there was not additional proof of the ‘ criminal fact ’ but only a naked *372 confession supplemented by a showing of outside proof that some of the statements in the confessions were true. Such a corroboration of the partial truthfulness of the confessions might .have its place in weighing the whole evidence to see if it made out a case beyond a reasonable doubt. But it does not satisfy the demand of section 395 * * * In- his brief on this appeal the District Attorney lists ten different items of evidence outside the confessions each of which ‘ corroborates ’ some statement or other in the confession, and he argues that this corroboration establishes that the defendant is the killer. Such corroboration there may be, and it may make it seem * possible and perhaps probable ’ (People v. Gordon, 194 App. Div. 665, 667) that defendant is in truth guilty, yet corroboration of the truthfulness of a confession is no answer at all to the demand of section 395 for additional proof of the corpus delicti. * * * But * * * significant though it may be and important as it surely would be on the question of the weight to be given to the confession, is not proof of a homicidal killing, and neither is any other of the listed items of ‘ corroboration ’ or all of them together.” (Italics supplied.)
This ruling makes it abundantly clear that there must be proof of the criminal agency which caused death, i.e., of the 1 £ criminal fact”. This is the corpus delicti test. Evidence which points to the truthfulness of the confession, while important to establish guilt does not suffice without proof of the “ criminal fact ”.
Following Cuozzo, in People v. Shanks (201 Misc. 511 [1951] I dismissed, on motion, an indictment charging Shanks with a design murder because independent of the confession there was no evidence of the “ criminal fact ”. The victim had been found dead in bed from “ asphyxiation from illuminating gas poison ”, so testified to by the Medical Examiner. This “ additional proof ’ ’ was as consistent with accidental death as murder.
I turn now to a consideration of the felony murder cases. That problem has been discussed, infra. Does it suffice to establish the corpus delicti of the underlying felony or must the corpus delicti of the homicide be established? Is there in any event a special rule for 15-year-olds who are deemed incapable in law of committing an underlying felony?
The cases may be briefly mentioned:
In People v. McGloin (91 N. Y. 241 [1882]) there was independent proof of both the killing and the underlying felony. This was also true in the later case of People v. Giusto (206 N. Y. 67 [1912]).
*373 In People v. Joyce (233 N. Y. 61 [1922]) the defendant confessed to shooting and killing a storekeeper in the course of a robbery. The body with the bullet wound furnished independent proof of the murder. But there was no independent proof of the corpus delicti of the underlying felony robbery. Judge Crane concurring on reversal, added an additional ground (not the opinion of the court): “It seems right and fair, therefore, that the felony committed or attempted resulting in death should first be established by evidence sufficient at law to convict of such felony. As stated, a confession alone without any corroboration as to the commission of the collateral felony is insufficient ” (p. 74).
In People v. Lytton (257 N. Y. 310 [1931]) the defendant confessed the homicide during the course of a felony. The body bore the tokens of the fatal wound. The trial court failed to charge that there must be “ additional proof ” of the underlying felony as well. The court held (p. 314): “ The corroborating evidence being sufficient to confirm the confession of a homicide, the Code does not require that it shall also confirm the confession of a homicide in any particular degree. ’ ’
Recently in People v. Louis (1 N Y 2d 137) the defendants confessed a robbery during which they choked the proprietor. They did not know they had killed him. The body bore the marks of the criminal agency and it was conceded during the trial that the victim had been “ brutally killed ”. The issue turned on the charge of the trial court, but Judge Fuld in his opinion stated (referring to the danger “ that a crime may be confessed when in fact no such crime has been committed by anyone ”) (Lytton, supra) (pp. 140-141): “ There is, of course, no such danger here. Defendants were charged with murder, not robbery and, accordingly, there was no need for evidence, separate and apart from the statements, of the underlying felony [citing cases]. * * * If the requests suggested the need for evidence, in addition to the confessions, of the underlying felony, they were based, as we have seen, on an erroneous view of the law and were for that reason properly refused. (See, e.g., People v. Gold, supra, 295 N. Y. 772; People v. Lytton, supra, 257 N. Y. 310, 314.) ”
These decisions are helpful, but not determinative, of the issue before me.
These decisions hold that in felony murder cases, “ additional proof ” of the corpus delicti of the homicide, i.e., of the criminal agency or “ criminal fact ” as Judge Desmond puts it, suffices to meet the requirements of section 395. This is a logical and sensible rule. Proof of the underlying felony is merely a substi *374 tute for proof of design to kill. But the crime charged is homicide and proof of the criminal agency of that crime suffices to avert the danger that “ a crime may be confessed when no such crime * * * has been committed by any one.” (People v. Lytton, 257 N. Y. 310, 314, supra.)
But in the instant case I must consider the opposite question. May ‘ ‘ additional proof ’ ’ of the corpus delicti of the underlying felony furnish additional proof” of the “corpus delicti” of the homicide?
To put it in specific terms in relation to the instant case: — May I consider as “additional proof” of the crime charged, to wit, design murder, the testimony of the Medical Examiner that the body showed marks of a forcible rape?
Such testimony does ‘1 corroborate ’ ’ the truth of the confession and materially affects the “weight” of the over-all evidence. But it does not satisfy the “ corpus delicti ” test as codified by section 395. For the additional proof of the underlying felony does not avert the danger that a defendant confess to a crime committed by someone’s criminal agency.
It is not semantics to suggest for example that additional proof of the underlying felony does not avert the danger that the victim of a felony suffered death by accidental means in flight in panic or in summoning help.
I think the statute in felony murder cases requires 1 ‘ additional proof ” that the homicide was caused by criminal means. But I do not so decide as a general proposition for we shall be confronted with cases, where guilt is positive, yet in the absence of marks of violence upon the victim and in the absence of eyewitnesses, proof of the criminal agency is impossible.
But in the instant case the defendant is not charged with felony murder. He is charged with design murder. The underlying felony of rape is not an element of that crime. (Indeed the defendant because of his age is deemed incapable of committing rape and in consequence of committing felony murder.) It defeats logic and reason to hold that in such a situation ‘ ‘ additional proof ” of the “ corpus deliciti ” or rape furnishes the “ additional proof ” required by section 395 of design murder.
I rule that I may not consider the Medical Examiner’s testimony concerning the physical evidence of rape in determining whether there is “ additional proof ” of the design murder to satisfy the demands of section 395.
In this connection I note that while the evidence of the rape, as part of the confession itself, is probably admissible to show motive for the design murder (People v. Morse, 196 N. Y. 306), the testimony of the Medical Examiner concerning the marks of *375 rape tends to prove commission of another crime not charged in the indictment and one which the defendant is in law incapable of committing.
I turn now to the circumstances proved, independent of and external to the confession, that the body when found was “ nude ”. Does that proof establish in any degree the criminal agency?
It furnishes convincing proof of the truth of the confession— strong if that fact was not reported in the newspapers— weaker if it was reported. It may tend also to disprove accident for obvious reasons.
But this is not the corpus delicti test mandated by the statute. As Judge Desmond stated in Cuozzo (292 N. Y. 85, 94): “ Such corroboration there may be, and it may make it seem ‘ possible and perhaps probable ’ * * * that defendant is in truth guilty, yet corroboration of the truthfulness of a confession is no answer at all to the demand of section 395 for additional proof of the corpus delicti.” The “ nude ” evidence it seems to me is no different than several of the 10 items listed in Cuozzo. Like those items, it serves to corroborate the truthfulness of the confession and it is surely important on the question of the weight to be given to the confession. But apart from the help it gets from the confession, it is not proof of a homicidal killing.
In those jurisdictions which follow the corpus delicti test and even in our own jurisdiction (People v. Reade, 13 N Y 2d 42, supra), it has been held that if any single element of several elements of the corpus delicti may be proved external to and independent of the confession, the other elements may be established by the confession itself. This is a sound rule where the corpus delicti has several elements or perhaps where there is no tangible corpus delicti of the particular crime. But there is only one element (apart from proof of death) of the corpus delicti of design murder and that is proof of death by criminal agency. Section 395 requires that this element be proved independent of the confession.
The “nude” evidence does not standing alone avert the danger that the deceased met her death by accident in flight from the defendant following his sexual attack upon her. (Under such assumed circumstances, this defendant charged with “ design ” murder and not “ felony ” murder must be found not guilty.)
In applying section 395 in murder cases, we are required to put aside the confession, and examine only the “ additional proof ”.
*376 The “ additional proof ” standing alone must establish that death was caused by criminal agency — no more but no less. The “ nude ” evidence it seems to me does not do so. The finding of the crushed body of the victim at the foot of the project building is no more evidence of criminal agency than the finding of the drowned body of Mrs. Brasch, or the mangled body of the victim in Guosso, or the asphyxiated body of the victim in Shanks. In all of these cases (if we disregard the confession as evidence of criminal agency) death could have resulted from accident as well as from criminal agency.
We cannot discard the corpus delicti rule since it is commanded by statute. We can perhaps modify it by requiring in those crimes having several elements of the corpus delicti, that “additional proof” of only one such element suffices if the confession itself establishes the other elements, for this makes sense. (Cf. People v. Ledyard, 32 Misc 2d 714.) And perhaps the flexible rule or the “less stringent rule” (as Judge Desmond put it) of Brasch and Jaehne should be applied to crimes having no tangible corpus. But this is within the power of appellate courts. I am bound by the statute and its interpretation in Guosso. (Cf. rule of State v. Yoshida, 44 Hawaii 352 [supra], no statute.)
I rule that there is no “additional proof” whatsoever to “corroborate” the confession before the Grand Jury. It is therefore insufficient as a matter of law. (Code Grim. Pro., § 395; People v. Ledyard, supra; People v. Shanks, 201 Misc. 511, supra.)
I express no opinion in other respects concerning “ weight ” of the evidence (People v. Miller, 247 App. Div. 489).
This would be my ruling on the trial. My decision pretrial affords the District Attorney the right to appeal which he would not have if the ruling ‘ ‘ right or wrong ’ ’ was made at the trial. (People v. Marra, 13 N Y 2d 18.) I believe this to be the better practice where “ close ” or “ novel ” issues of law are involved.
Ill
The defendant’s contention that the District Attorney failed to advise the Grand Jury of its power to recommend transfer to the Family Court (Code Crim. Pro., § 312-c, subd. [c]; § 312-f, subds. [a], [b]; Family Ct. Act, § 715) need not be decided in view of the disposition of the other contentions. I merely note that this contention raises the collateral but perennial issue whether the “ charge ” or “ instructions ” of the District Attorney to the Grand Jury is a consideration on the motion to dismiss. In practice we never see the “ charge ”. In consequence, we do *377 not know whether the law is accurately or adequately explained to the Grand Jury.
I note however that a previous application for “ transfer ” was denied by another Judge. This binds me. It does not bind the District Attorney. Perhaps he is justified in recommending “ transfer ” and not alone because of the problem of proof at the trial. (See, however, People v. Lewis, 235 App. Div. 559, revd. on other grounds 260 N. Y. 171; also, Family Ct. Act, § 744 re confessions which may not require the corpus delicti rule in juvenile proceedings.)
If committed as the People contend, this is a horrifying crime. But we have in this State a long-established and well-considered policy (based on experience) behind Juvenile Court procedures — a policy well expressed by Judge Lehman in People v. Roper (259 N. Y. 170, 177, supra). Besides, it is difficult to understand why a “ child ” deemed incapable of committing robbery or rape should be deemed capable of committing design murder or why the geography of the crime should play a part (Ludwig, Youth and the Law, Table II, p. 30 et seq., published by Youth Counsel Bureau). I have often advocated that only considerations of the particular crime and the particular offender should determine responsibility, without regard to age.
The motion is granted. Stay will be ordered if requested by the District Attorney.